No. 43,438

EMMA J. BARNES, *Appellee,* v. MID-CONTINENT CASUALTY COMPANY, *Appellant.*

(388 P. 2d 642)

Opinion filed January 25, 1964.

*John B. Towner,* of Pittsburg, argued the cause, and *H. Gordon Angwin,* of Pittsburg, was with him on the briefs for the appellant.

*J. John Marshall,* of Pittsburg, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Emma J. Barnes, plaintiff (appellee), brought this action against Mid-Continent Casualty Company, defendant (appellant), to recover on a fire and lightning insurance contract for losses sustained to her premises occasioned by lightning striking the northwest corner of her house.

The damage to the house consisted of the electrical system being short-circuited, the burning out of the heating element on a water tank, damage to screen doors and windows, allowing rain to come into the house, thus damaging the playroom ceiling and floor, and damage to the exterior of the house resulting in the outside brick wall being cracked.

The defendant defended on the ground that there had been an accord and satisfaction of the damage, and denied that the damage to the exterior wall of the house was caused by lightning. The issue of an accord and satisfaction was raised by defendant at all stages of the proceedings.

The case was submitted to a jury on the issues of whether or not plaintiff's dwelling sustained damages as a result of being struck by lightning, and if so, the amount of the damage sustained, and whether or not there had been an accord and satisfaction of plaintiff's claim for damages. The jury returned its general verdict in favor of the plaintiff, and in answer to special questions submitted to it found that plaintiff's house was struck by lightning on the date alleged, that the damage to the house was caused by the lightning, and that the $115 check offered by defendant and cashed by plaintiff was not in full settlement of all losses arising out of the storm.

From an order overruling its post trial motions, defendant appeals and asserts that the principal issue presented was whether or not an accord and satisfaction was effected. If this issue is decided adversely to defendant, then defendant presents the second issue of whether or not attorney fees were properly allowed, and if so, was the allowance of such fees reasonable.

To answer the questions presented it is necessary to review the evidence. The pertinent portion of the evidence discloses that during a severe thunder storm on May 19, 1960, lightning struck the northwest corner of the plaintiff's dwelling, knocking the plaintiff to the floor and rendering her unconscious. When the plaintiff regained consciousness the house was dark and she crawled out of the room, down the hall, outdoors and over to a neighbor's home. She returned to her home the next day and discovered that lightning had struck the exterior wall of her home causing the wall to crack. When plaintiff entered the house she found the glass broken in the front door, water over the playroom floor, and she was unable to close two of the windows on the north wall. Water was dripping from the ceiling and there were cracks in the west wall. She telephoned the defendant company's agent, Steve Elliott, to report her loss, and after approximately two weeks an adjuster, Jack Williams, came to her home.

In the meantime plaintiff had had some repair work done in order to avoid any further damage from rain. When the adjuster,

Mr. Williams, belatedly arrived he apologized to plaintiff for being late. Mr. Williams advised plaintiff to have the grease taken off the front of the house and to have the living room repaired, to put glass in the storm door and to have the aluminum frame repaired over the picture window. Williams told her to go ahead and have these repairs made and he would give her a check to pay for the repairs. Plaintiff then stated she wanted the brickwork done because water was coming in. Williams told plaintiff he would pay her for the certain itemized work authorized to be done, and that in the meantime she should get some estimates on the brickwork and carpenterwork on the house. Williams advised plaintiff he was in a hurry as he had to go out of town, but while there he had the plaintiff sign two blank proof of loss forms, an original and a copy. The adjuster took the blank proof of loss forms to his office and had his secretary fill in the blanks. As typed, the proof of loss form stated: "Windstorm struck dwelling and damaged door, screen door, plastering and interior." On the form under "Statement of Actual Cash Value and Loss and Damage" appeared the following:

"1—2-8 X 6-8 Storm Door ........................... $ 29.95
1—Door Check ..................................... 2.95
1—2-8 X 6-8 Front Door............................ 34.50
Varnish .......................................... 3.15
Patching Plaster & Paint.......................... 15.45
Total Labor .................................. 62.00

148.00
Less Betterment ................................ 33.00

$115.00"

The proof of loss was marked file number 880234.

The defendant issued its check in the sum of $115, dated June 7, 1960, payable to Emma J. Barnes. The check specifically provided that it was in payment of claim number 880234, which was the proof of loss filled in by Adjuster Williams covering only the items hereinbefore specified. The plaintiff cashed this check. The adjuster testified the settlement covered the front door, the roofing and the playroom, which plaintiff had already had repaired, and also included some varnishing of the front door and labor in hanging both doors, and some plastering and painting; but there was no mention made of the lightning damage to the exterior wall on which Adjuster Williams advised plaintiff to obtain estimates.

Subsequent to the cashing of the check plaintiff obtained estimates on the brickwork repair and turned them over to the defendant company. On two different occasions the defendant sent representatives to plaintiff's home to view the damage to the outside wall, and on one occasion pictures were taken by them of the corner of the house showing the crack in the exterior wall.

It was sometime subsequent to these visits that plaintiff was advised her policy was canceled and defendant denied liability.

Defendant contends plaintiff's acceptance of defendant's check in the amount of $115 constitutes an accord and satisfaction of plaintiff's entire claim. We do not so view it. It is a well-established rule in this state that an accord and satisfaction is the adjustment of a disagreement as to what is due from one party to another and the payment of the agreed amount; and like all other agreements, must be consummated by a meeting of the minds of the parties, accompanied by a sufficient consideration. If a creditor is to be held to abate his claim against the debtor, it must be shown that he understood that he was doing so when he received the claimed consideration therefor. (*Manning v. Woods, Inc.,* 182 Kan. 640, 642, 643, 324 P. 2d 136; *Barton v. Welker,* 185 Kan. 294, 298, 341 P. 2d 1037; *Lighthouse for the Blind v. Miller,* 149 Kan. 165, 167, 86 P. 2d 508.)

Where, as in the instant case, it appears an issue of fact exists as to what the payment and the accord and satisfaction actually covered, that question is to be determined by the trier of facts on the basis of whether there has been a meeting of the minds of the parties and the unity of purpose and intention as to the extent of the settlement. (*Barton v. Welker,* supra, p. 299; *Kansas Power & Light Co. v. Hugoton Production Co.* [Tenth Circuit], 251 F. 2d 946.)

Applying the rules in the foregoing decisions, we have no hesitancy in concluding there was substantial evidence to support the jury's finding that the plaintiff's damage to her home was due to being struck by lightning and to support the finding that neither party understood the acceptance of the check was an accord and satisfaction. The evidence clearly discloses the check was given in payment of the specified items in the proof of loss only, and that the damage to the outside wall was to be left for future negotiations.

As to defendant's second contention, G. S. 1961 Supp., 40-256, provides that in all actions hereinafter commenced in which judgment is rendered against any insurance company as defined, if it

appears from the evidence that such company has refused without just cause or excuse to pay the full amount of the loss, the court in rendering judgment shall allow the plaintiff a reasonable sum as attorney fee to be recovered and collected as a part of the costs.

It is a standing rule of this court that the provisions of the mentioned statute are construed to authorize the allowance of a reasonable attorney fee for the insured in all actions commenced in which judgment is rendered against an insurance company on a policy of insurance if it appears that the insurance company has refused without just cause or excuse to pay in accordance with the terms of the policy. (*Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 366 P. 2d 219; *Allen v. Hartford Fire Ins. Co.*, 187 Kan. 728, 359 P. 2d 829; *Humfeld v. Pyramid Life Ins. Co.*, 187 Kan. 231, 356 P. 2d 668.)

Defendant's contention that its refusal to pay in the instant case was not without just cause or excuse cannot be sustained. The record clearly discloses defendant acknowledged its liability to plaintiff by paying for the damage to the inside of the house and advised plaintiff to secure bids on the damage to the outside brick wall; that it subsequently canceled plaintiff's policy and denied further liability. In order to secure full compensation for her damages, the plaintiff was compelled to bring this action. Under the record we are of the opinion there was ample evidence to support the trial court's finding that defendant insurance company refused, without just cause or excuse, to pay the amount of loss suffered by the plaintiff, and that plaintiff was entitled to a reasonable sum as an attorney fee to be assessed as costs.

Defendant further complains the allowance of attorney fees was excessive. The real test in the allowance of attorney fees is the value of the services performed by the attorney on behalf of his client; and the court in determining the amount thereof may consider labor, time and trouble involved, as well as the extent of services rendered and the nature and importance of the litigation; also the responsibility imposed on such counsel; the amount of money involved; the skill and experience called for in the performance of the services; the professional character and standing of the attorney; and the results secured. (*Wolf v. Mutual Benefit Health & Accident Association*, supra, p. 712; *Attebery v. M. F. A. Mutual Ins. Co.*, 191 Kan. 178, 380 P. 2d 327.) It has also been stated the reasonable value of attorney fees under legislative mandate rests largely in the

discretion of the trial court, and such allowance will not be reversed on appellate review when supported by competent testimony. (*Wolf v. Mutual Benefit Health & Accident Association,* supra, p. 714; *Groff v. Automobile Owners Safety Ins. Co.,* 180 Kan. 518, 523, 306 P. 2d 130.)

A review of the testimony of competent, experienced attorneys relative to the value of the services rendered by counsel for the plaintiff sustains the amount allowed by the trial court, and the record before us compels the conclusion the trial court did not err in allowing the attorney fees to the plaintiff's attorney or in holding the sum allowed was not unreasonable.

Other questions raised by the defendant have been considered and found to be without sufficient merit to justify reversal. The judgment of the trial court is affirmed.

JACKSON, J., not participating.