521 P.2d 127

The FIRST NATIONAL BANK OF SANTA FE, Plaintiff-Appellee and Cross-Appellant,

v.

Paul D. WOOD, Defendant-Appellant and Cross-Appellee.

No. 9742.

Supreme Court of New Mexico.

April 12, 1974.

Gallagher & Ruud, Albuquerque, for appellant.

White, Koch, Kelly & McCarthy, Santa Fe, for appellee.

OPINION

MONTOYA, Justice.

This is an appeal from a judgment awarding plaintiff-appellee First National Bank of Santa Fe (hereafter Bank) the amount of $30,000 plus interest and attorney's fees on its claim based on two $15,000 promissory notes, a continuing guarantee, and a $30,000 note which was an extension of the two $15,000 notes. The defendant-appellant Paul D. Wood (hereafter Wood) appeals. The Bank cross-appeals from the portion of the judgment denying certain cost items.

The facts as found by the trial court are essentially as follows. On July 28, or 29, 1969, Wood applied to the Bank for a line of credit to permit borrowings by Wood up to a maximum of $30,000. The Bank agreed to establish the line of credit and to lend Wood up to $30,000 with interest. While these monies were to be loaned to Wood, it was contemplated by Wood, and made known to the Bank by Wood, that the proceeds of the loans were to be actually used by other parties or entities. The monies, when loaned by the Bank, were to be deposited in an account at the Bank designated "J. B. Kitten, Trust Account." One of the conditions set by the Bank for establishment of the line of credit was that Wood and his wife should sign and deliver to the Bank a contract called "Continuing Guaranty of Promissory Note." Wood did in fact affix his signature on the first signature line of the document, but failed to have his wife sign. Instead, Wood placed the document in the possession of one George Mellen and/or J. B. Kitten. The purported signature of Mrs. Paul D. Wood was written below the genuine signature of Paul D. Wood by some third person. Before August 4, 1969, the document was sent or delivered to the Bank. The Bank accepted and relied upon the Continuing Guaranty submitted by Wood and upon the authenticity of the signature thereon. The Bank was unaware of the lack of the true signature of Mrs. Paul D. Wood on the document until after

the filing of the answer to the original complaint in this matter. On July 30, 1969, after approval of the line of credit and after Wood had promised to furnish the Continuing Guaranty signed by him and his wife, Wood signed the promissory note dated July 30, 1969, in the face amount of $15,000. All typing on this note was placed thereon before it was presented to Wood for signature. The Bank, after Wood's execution and delivery of the July 30, 1969, note, promptly made the appropriate $15,000 credit to the J. B. Kitten Trust Account as directed by Wood. During that same day the Bank, at Wood's request, furnished Wood with five or six printed promissory note forms used by the Bank. After leaving the Bank's offices, Wood signed all of the printed form notes payable to the Bank and authorized Kitten to use the signed note forms in connection with Wood's line of credit at the Bank. Wood's signatures on these notes were all on the first or top signature line, and without any indication whatsoever that he was signing in a representative capacity. On August 5, 1969, Kitten went to the Bank with a note signed by Wood, which had already been completed in the form it finally appeared, or which was completed at the Bank pursuant to Kitten's instructions. This note, dated August 5, 1969, in the face amount of $15,000 was taken in good faith by the Bank and pursuant to instructions given by Wood to the Bank on July 30, 1969. The Bank promptly credited the full amount to the J. B. Kitten Trust Account, pursuant to directions contained on the note. On or about December 2, 1969, Kitten brought to the Bank a promissory note bearing Wood's authentic signature. The blanks in the note form had either been completed by Wood, or by Kitten pursuant to authority from Wood, or were filled in at the Bank pursuant to Kitten's instructions within his authority from Wood. This note was dated November 11, 1969, in the amount of $30,000 bearing interest at 9½% per annum, payable 90 days after its date. At that time the interest was paid on the July 30 and August 5,

1969, notes up to November 11, 1969. Acting in good faith reliance upon Kitten's authority from Wood and the validity of the $30,000 note, the Bank accepted said note, stamped the two $15,000 notes "RENEWED," and sent them to Wood, who received them in due course and who retained possession of them. The renewal note of November 11, 1969, was accepted by the Bank as an extension of Wood's $30,000 obligation. On July 30, 1969, and at all material times thereafter, Wood was aware that Kitten had in his possession three or four promissory notes payable to the Bank and signed by Wood with his individual signature only. Wood made no effort to retrieve or regain possession of these notes, or to alter or cancel Kitten's authority with respect to these notes, or to notify the Bank of any modification of Kitten's authority to deliver to the Bank notes signed by Wood for use in borrowing or obtaining extensions under Wood's line of credit. The Bank was not aware or on notice at any material time that Wood had left with Kitten a supply of note forms signed in blank by Wood. Wood knew, or was on notice, that Kitten intended to and did use a promissory note form payable to the Bank and signed by Wood to obtain the extension on Wood's $30,000 obligation to the Bank, and Wood acquiesced in such action by Kitten. Further, Wood was at all material times reasonably familiar with the deposits to and the disbursements from the J. B. Kitten Trust Account. The trial court also found that the Bank's reasonable attorney's fee was $5,000.

On the basis of the above findings, the trial court concluded that the Bank was a holder in due course, made other conclusions, and directed entry of judgment in favor of the Bank.

Wood sets out four points as grounds for reversal. First, that the Bank was not a holder in due course. Second, that because the Bank was not a holder in due course, the Bank was subject to Wood's defense of non-performance of a condition precedent and failure of consideration. Third, that the Bank's extension of Wood's

July note amounted to fraud, since the extension was unauthorized. Fourth, that the trial court erred in not permitting the cross-examination of a witness.

The Bank argues that the trial court's findings of fact are supported by substantial evidence; that Wood was permitted to cross-examine his own witness and, consequently, no issue as to such cross-examination is present to review. We believe that the Bank's first point is dispositive of this appeal.

Wood in his brief devotes a considerable part thereof attacking the trial court's conclusion that the Bank was a holder in due course. Wood also complains that because of such a conclusion some affirmative defenses were unavailable to him. However, all of the factual issues with respect to whether Wood signed the note in an individual or representative capacity were litigated. So too were the allegations against the Bank that the Bank's actions constituted fraud, bad faith and negligence, which allegations Wood relied upon for support of his defenses of failure of consideration, estoppel and material alterations of the notes. In its findings, the trial court resolved all the factual issues presented. Therefore, it is unnecessary for us to consider whether the Bank was a holder in due course. In substance, the trial court concluded that the defenses presented by Wood were not valid, even as against a mere holder.

■ We must then consider the issue of whether the findings of the trial court are supported by substantial evidence. It has been a long-standing rule in this jurisdiction that this court, on appeal, will not weigh the evidence, resolve conflicts therein, or pass on the credibility of the witness, where the evidence substantially supports the findings made by the trial court. We said in Tome Land & Improvement Co. v. Silva, 83 N.M. 549, 552, 494 P.2d 962, 965 (1972):

> "It is well settled in New Mexico that the appellate court will not substitute its judgment for that of the trial court in weighing the evidence. If the trial court's findings are supported by substantial evidence, they must be affirmed. Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970). Substantial evidence means such relevant evidence as a reasonable mind might find adequate to support a conclusion. Cave v. Cave, supra."

■ After a careful consideration of the entire record, we hold that the findings of the trial court are supported by substantial evidence.

We have examined Wood's fourth claim of error, that the trial court erred in not permitting the cross-examination of the witness Ross Martinez, and a review of the record relating thereto clearly shows that this claim is without merit.

■ The Bank in its brief asks for an allowance of reasonable attorney's fees for legal services in connection with this appeal, and cite Cabot v. First National Bank of Santa Fe, 81 N.M. 795, 474 P.2d 478 (1970), in support thereof. Its petition for attorney's fees herein is well taken. Accordingly, Wood is ordered to pay to the Bank herein $2,000 for legal services in connection with this appeal, together with costs to be assessed by the Clerk.

In view of the foregoing, the judgment of the trial court is affirmed.

It is so ordered.

STEPHENSON and MARTINEZ, JJ., concur.