James H. DeWITT II, George E. Baker II, Anne T. DeWitt, Hillcrest Investment Partnership, a Wyoming partnership, and Hillcrest Water Inc., a Wyoming corporation, a/k/a Hillcrest Water Company, Appellants (Plaintiffs),

v.

Edward C. BALBEN, Marion C. Balben and Edward C. Balben and Marion C. Balben d/b/a Hillcrest Development Company, Appellants (Defendants),

v.

James H. DeWITT II, George E. Baker II, Anne T. DeWitt, Hillcrest Investment Partnership, a Wyoming partnership, and Hillcrest Water Inc., a Wyoming corporation, a/k/a Hillcrest Water Company, Appellees (Plaintiffs).

Nos. 85–127, 85–128.

Supreme Court of Wyoming.

April 23, 1986.

David F. Palmerlee and Blair Klein, Buffalo, for appellants in No. 85–127 and appellees in No. 85–128.

Harry G. Bondi, Casper, for appellees in No. 85–127 and appellants in No. 85–128.

Before THOMAS, C.J., ROONEY, BROWN, CARDINE, JJ., and RAPER, J., Retired.

BROWN, Justice.

This appeal involves certain water rights to a well. An action was brought by James H. DeWitt II, George E. Baker II, Anne T. DeWitt, Hillcrest Investment Partnership, and Hillcrest Water, Inc. (hereinafter plaintiffs) against Edward C. Balben, Marion C. Balben d/b/a Hillcrest Development Company (hereinafter defendants)[1] to determine the plaintiffs' rights in a water well located on the defendants' property. After trial to the court, a lengthy judgment was entered. The parties dispute who actually prevailed. In Case No. 85–127, the plaintiffs appeal from the district court's denial of attorney's fees and raise the following issues:

"1. Did the Court err in not awarding reasonable attorney fees to Plaintiffs?

"2. Are Plaintiffs entitled to reasonable attorney fees for prosecuting this appeal and defending the appeal of Defendants on all other issues?"

In Case No. 85–128, the defendants cross-appeal from the court's judgment and raise a number of issues. The arguments in their brief do not track the stated issues. Rather, the issues are embodied in the following arguments, summarized by the defendants as follows:

"Argument I

"The plaintiffs' cause of action to be declared owners of the Leavitt Spring water right is barred by the statute of limitations.

"Argument II

"There is insufficient evidence to support the court's ruling that appellant Balben in the contract of 1980 gave consent to the plaintiffs to enter upon Balben's land to rejuvenate the Leavitt Spring.

"Argument III

"The trial court erred in construing the 1962 'Agreement for Use of Water' to convey all of appellants' right, title, and interest in the Leavitt Spring appropriation.

"Argument IV

"The plaintiffs should be equitably estopped from claiming fee simple ownership of the Leavitt Spring.

"Argument V

"Defendants are entitled to reasonable attorney's fees as set forth in the 1980 'contract'."

We will affirm the decision of the trial court in all respects, save the denial of attorney's fees to the plaintiffs. We will reverse and remand to the district court for a determination of reasonable attorney's fees to be awarded the plaintiffs for fees incurred at trial. We will also award the plaintiffs reasonable attorney's fees incurred on appeal.

The factual and procedural history of the case is long and complex. In 1962, the defendants sold the plaintiffs' predecessors in interest a bottled water business known as the Hillcrest Water Company. As part of the sale, the defendants also granted to the plaintiffs the water rights to two springs located on the defendants' land, as well as the right of ingress and egress

---

1. Ordinarily, we refer to the parties on appeal as appellants and appellees. However, because of two appeals which are consolidated for disposi-tion, we will refer to the parties simply as plaintiffs and defendants to provide clarity and avoid confusion.

upon the defendants' land to maintain the springs. One of the springs is no longer used. The other spring, known as the Leavitt Spring, is the subject of this action.

Between 1970 and 1980, the defendants developed three additional wells upon their land known as Hillcrest Wells Nos. 1, 2, and 3. These wells are in close proximity to the Leavitt Spring, and are used by the defendants to supply water for the Hillcrest Development Company, owned by the defendants. All four wells are supplied from a common source of water. When the defendants developed and used the three Hillcrest wells, the water level in the Leavitt Spring dropped to a point where it was unusable by the plaintiffs. Subsequently, one of the defendants back-filled the Leavitt Spring, destroying the facility and forcing the plaintiffs to obtain their water from an alternate source. The defendants did not allow the plaintiffs to rehabilitate the Leavitt Spring, even though the defendants granted such right in the 1962 sale.

In order to resolve the problem, the parties entered into an agreement in 1980 which again set forth the plaintiffs' right to rehabilitate the Leavitt Spring. Nevertheless, the defendants continued to refuse access to the plaintiffs for the purpose of rehabilitating the Leavitt Spring. Apparently, the defendants sought to place their wells in a priority senior to the plaintiffs' Leavitt Spring by destroying it. As Edward Balben, one of the defendants, stated in a letter to the state engineer on January 6, 1983:

"* * * As I understand the State Engineer's rules, when a Spring has been dormant for over five years it reverts back to the State, which is the case here. "Naturally Hillcrest Water Co. (Plaintiffs) wants to dig at the dormant (Leavitt) Spring site, even though it would probably eliminate or contaminate Well # 2 and # 3, which are within 25' and 50' of it. To do otherwise would allow Hillcrest Development (Defendants) to have Senior Water Rights * * *."

In any event, the plaintiffs were not allowed to rehabilitate the Leavitt Spring and the defendants purportedly offered to sell the plaintiffs Hillcrest Development Company, owned by the defendants, for a sum of $130,000, or instigate litigation. The Leavitt Spring is located on the land whereupon Hillcrest Development is situated, so it appears the defendants attempted to sell the plaintiffs Leavitt Spring twice—by forcing the plaintiffs to buy Hillcrest Development Company in order to rehabilitate the Leavitt Spring when the plaintiffs had already purchased the water rights to such spring from the defendants in 1962. In a letter to the plaintiffs dated February 23, 1983, Edward Balben of Hillcrest Development stated:

"The purpose of this letter is to make it clear that if my terms of January 27, 1983 are not agreed to no later than March 1, 1983 they will be cancelled and you may *either agree to the terms of August 28, 1982 or proceed with Court Action. Let it be clarified that there shall be no trespassing until all matters are settled.*" (Emphasis added).

Therefore, on April 15, 1983, the plaintiffs filed an action to settle their right in the Leavitt Spring located on the defendants' land. The parties arrived at a settlement before trial, and the court subsequently approved such and entered judgment thereon on June 26, 1984.

The defendants did not appeal from the judgment but subsequently filed to withdraw the stipulation and judgment on July 19, 1984. The court found that the defendants' attorneys did not have authority to enter into the earlier stipulation and judgment, and therefore the court vacated the earlier judgment and awarded the plaintiffs attorney's fees.

Trial was subsequently had to the court, resulting in a judgment filed April 17, 1985. The court granted the plaintiffs relief in declaring the plaintiffs to be the absolute owners in fee simple of the Leavitt Spring; the court enjoined the defendants from interfering with the plaintiffs' right to maintain and rehabilitate the Leavitt Spring;

the court awarded the plaintiffs $452.59 in costs, but refused to award the plaintiffs attorney's fees or damages. The court found in part:

"IT IS THEREFORE HEREBY ORDERED, ADJUDGED AND DECREED that the Plaintiffs are the sole and absolute owners in fee simple of, and are entitled to the exclusive use and possession of the Irrigation Spring and Leavitt Spring Water Rights, that neither the Defendants, nor their successors in interest have any right, title, interest, claim or estate in the Irrigation Spring or Leavitt Spring Water Rights or any part thereof and that title to the Irrigation Spring and Leavitt Spring Water Rights shall be, and is forever quieted in Plaintiffs.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendants be, and are, hereby forever enjoined and restrained from interfering with the Plaintiffs' rights to maintain the Leavitt Spring, to develop, expand and revive the Leavitt Spring and of ingress and egress to the Leavitt Spring all granted pursuant to the 1962 Agreement, the 1980 Contract and the 1980 Right of Way Easement as set forth in paragraphs XII, XIII and XIV of this Judgment.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the prayer of the Plaintiffs and the prayer of the Defendants for attorney's fees be, and is, hereby denied.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' prayer for monetary damages be, and is, hereby denied.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants' counterclaim for monetary damages be, and is, hereby denied.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs be, and are, hereby, awarded costs in the amount of $452.59."

*Case No. 85–128*

We will consider the issues raised by the defendants in Case No. 85–128 first.

1.

In their first argument, the defendants claim the plaintiffs' action is barred by the applicable statute of limitations. The defendants contend the action is barred under § 1–3–103, W.S.1977, which reads:

"An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten (10) years after the cause of such action accrues."

Under that statute, an action to recover real property must be brought within ten years after the cause of action accrues or it is barred.

The plaintiffs, on the other hand, contend their action was one for declaratory relief under the Wyoming Uniform Declaratory Judgment Act, §§ 1–37–101 through 1–37–114, W.S.1977, which provides in part:

"Any person interested under a deed, will, written contract * * * may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations." Section 1–37–103, W.S.1977.

The plaintiffs then contend the applicable statute of limitations is § 1–3–105, W.S. 1977, which provides in relevant part:

"(a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:

"(i) Within ten (10) years, an action upon a specialty or any contract agreement or promise in writing * * *."

For purposes of this appeal, it matters not which statute is used—both statutes prescribe a ten-year period from the time the cause of action accrues. The rule is settled that a cause of action accrues only when forces wrongfully put in motion produce injury. *Duke v. Housen,* Wyo., 589 P.2d 334, reh. denied 590 P.2d 1340, cert. denied 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979).

The case of *Body v. McDonald,* 79 Wyo. 371, 334 P.2d 513 (1959), involved an action in the nature of a declaratory judgment and to quiet title to a mineral interest in land. The defendants contended the action was barred by the applicable statute of limitations. The court rejected the contention and quoted with approval the following language from 1 Anderson, Declaratory Judgments, § 341, p. 783 (2nd ed. 1951):

" 'The statute of limitations in a declaratory action does not begin to run against a right to maintain the same, until an actual controversy has accrued or occurred, and undisclosed conflicting claims between persons bearing jurial relations do not constitute a controversy which would set in operation the statute of limitations against the action for declaratory relief. Until an actual controversy has arisen between the parties no cause for declaratory relief has accrued and the statute of limitations is not operative. So it would seem to follow, that until there is a dispute as to the making or interpretation of a contract, no right to maintain a declaratory action has accrued.' " Id., 334 P.2d at 519.

One authority has stated:

"In general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement, or when there is a remedy available; and whenever one person may sue another a cause of action has accrued and the statute of limitations begins to run, but not until that time. So, whether at law or in equity, the cause of action arises when, and only when, the aggrieved person has the right to apply to the proper tribunal for relief. The statute does not attach to a claim for which there is no right of action, and does not run against a right for which there is no corresponding remedy or for which judgment cannot be obtained. The true test, therefore, to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result, regardless of the time when actual damage results; the fact that he might previously have brought a premature or groundless action is immaterial. The statute of limitations does not require a person to institute proceedings to enforce a right within a time limited, when such proceedings will not conclusively determine such right as to each party.

"The accrual of a cause of action has been said to depend on the uniting of at least two elements, injury and damages. A party's right of action is not suspended until he ascertains that he has a cause of action." 54 C.J.S. Limitations of Actions § 109, pp. 11–14 (1948).

Upon review of the pertinent facts in this case, we are not able to find the plaintiffs' action barred by either statute of limitations quoted above. The trouble between the parties arose sometime in 1978 when the Leavitt Spring's water level dropped to a point where it was unusable by the plaintiffs; later in 1978 the defendants backfilled the spring, destroying the facility. Therefore, the plaintiffs essentially had a cause of action against the defendants for interference with the plaintiffs' water right to the Leavitt Spring in 1978. Under the statute of limitations (§ 1–3–103 or § 1–3–105) then, the plaintiffs had until the year 1988 in which to bring their action. The plaintiffs' action commenced in 1983. We hold the action is not barred by the statute of limitations.

### 2.

In their second argument, the defendants claim there was insufficient evidence to support the court's ruling that Edward Balben gave his consent to the plaintiffs under the 1980 contract to enter upon the defendants' land to rehabilitate the Leavitt Spring. When reviewing a sufficiency-of-the-evidence question, the rule is that so long as there is sufficient evidence upon which the trial court could rationally base its decision, such will not be overturned by the appellate court. *Thomasi v. Koch,*

Wyo., 660 P.2d 806 (1983); *Palmeno v. Cashen,* Wyo., 627 P.2d 163 (1981); *Goodwin v. Upper Crust of Wyoming, Inc.,* Wyo., 624 P.2d 1192 (1981).

The original 1962 agreement between the defendants and the plaintiffs' predecessors in interest provided the following:

"3. For the purpose of exercising said use of water rights, Users shall have the right of ingress and egress to said water springs, and shall have the right to maintain said springs at all times.

"4. In the event that said water springs, as they now exist, shall prove inadequate to supply the water required and needed for the use hereinabove stated, it is agreed that Users shall have the right to develop additional springs, at Users' expense; provided, however, that any development or expansion of said water springs shall be subject to the prior approval of the Owners, their heirs, or assigns."

The terms of such agreement are clear: The defendants granted to the plaintiffs the right of ingress and egress for the purpose of maintaining the spring. In 1980, the parties expressly ratified their earlier agreement made in 1962 and the defendants again agreed to allow the plaintiffs the right to rehabilitate the spring:

"1. The Agreement for Use of Water mentioned above, shall remain in full force and effect except as modified herein.

* * * * * *

"3. Pursuant to the provisions of paragraph 4 of the above described Agreement for Use of Water, the First Party consents to the Second Parties development, expansion and revival of what is commonly known as Hillcrest Springs No. 1 which is current partially dormant, provided however, that the Second Party shall exercise every reasonable precaution in such development, expansion and revival so as not to disturb the current water production from the spring area generally or unnecessarily disturb or contaminate the area or the appliances and line in and leading from the area.

With respect to future development or expansion, prior approval by the First Party shall continue to be necessary as required by the above-described Agreement for Use of Water, provided however, that said approval shall not be unreasonably withheld consistent with the objectives of this Agreement."

The terms of the 1980 contract above are equally clear. The contract expressly states that the plaintiffs have the right to revive the spring—such right obviously includes the right to enter upon the defendants' land for purposes of rehabilitating the spring.

We agree with the findings made by the trial court on this issue when it concluded:

"XI.

"That Plaintiffs have been and are in substantial compliance with their obligations under the 1962 Agreement and the 1980 Contract.

"XII.

"That the Defendants did grant, bargain and convey unto the individually named Plaintiffs a right of way easement by document entitled 'Right of Way Easement' dated the 9th day of February, 1980, and recorded in the office of the County Clerk, Natrona County, Wyoming, on the 11th day of March, 1980, in Book 286 at page 028 (hereinafter referred to as the '1980 Right of Way Easement').

"XIII.

"That the 1962 Agreement, at Paragraph 3 thereof, provided 'for the purpose of exercising said use of water rights, user shall have the right of ingress and egress to said water springs, and shall have the right to maintain said springs at all times' which includes the right of Plaintiffs to install, maintain and replace such water pipelines as are reasonably

necessary for exercise of Plaintiffs' Leavitt Spring Water Right.

### "XIV.

"That by Paragraph 3 of the 1980 Contract, the Defendant did consent to the Plaintiffs' development, expansion and revival of the Leavitt Spring water right.

### "XV.

"That Defendants have wrongfully denied the Plaintiffs the right to maintain the Leavitt Spring, the right to develop, expand and revive the Leavitt Spring and the right of ingress and egress to the Leavitt Spring, all granted pursuant to the 1962 Agreement, the 1980 Contract and the 1980 Right of Way Easement, as set forth in paragraphs XII, XIII and XIV of this Judgment.

### "XVI.

"That Plaintiffs will suffer irreparable harm from the wrongful denial by the Defendants of Plaintiffs' rights, that Plaintiffs have no adequate remedy at law for Defendants' wrongful denial of Plaintiffs' rights, and that Plaintiffs are entitled to an injunction enjoining Defendants from interfering with Plaintiffs' rights to maintain the Leavitt Spring, to develop, expand and revive the Leavitt Spring and of ingress and egress, all as set forth in paragraphs XII, XIII, and XIV of this Judgment."

We find the court's judgment was supported by substantial evidence and conclude such judgment was proper under the facts and circumstances attendant here.

### 3.

In their third argument, the defendants claim the trial court erred by construing the 1962 agreement as conveying all of the defendants' right, title and interest in the Leavitt Spring to the plaintiffs. The applicable provisions of the 1962 agreement provided:

"THIS AGREEMENT, made this 16th day of June, 1962, between Edward C. Balben and Marion C. Balben, herein-

after called 'Owners', and James H. DeWitt and Anne T. DeWitt, hereinafter called 'Users', all of whom reside in Natrona County, Wyoming:

"WITNESSETH:

"THAT WHEREAS, the Owners warrant to Users that they own and have an exclusive right and use in and to that certain certificate of appropriation of water dated January 23, 1924, by the State of Wyoming to Herbert C. Leavitt and recorded in Book 2 of Water Deeds at page 250, in the records of Natrona County, Wyoming; and that certain certificate of appropriation granted to Herbert C. Leavitt, October 5, 1927, by the State of Wyoming, and recorded in Book 2 of Water Deeds at page 285, in the office of the County Clerk and Ex-officio Register of Deeds in and for Natrona County, Wyoming, they do hereby grant to Users a first and prior right to the use of the water from said springs and seeps on the terms, conditions, and purposes hereinafter enumerated."

In Wyoming, a water right is a property right of high order possessing none of the characteristics of personal property, and is considered real property. *King v. White*, Wyo., 499 P.2d 585 (1972). See also 2 Kinney, Irrigation and Water Rights § 769, pp. 1328–1329 (2nd ed.). Therefore, to effect a valid transfer, it follows that such agreement should be in writing, must indicate a specific intention to convey the property and describe it. *King v. White*, supra; 93 C.J.S. Waters § 208, p. 1043 (1956); 78 Am.Jur.2d Waters § 241, p. 686 (1975). Regarding the conveyance of water rights, this court stated in the early case of *Whalon v. North Platte Canal & Colonization Co.*, 11 Wyo. 313, 71 P. 995, 999 (1903):

"These instruments are referred to throughout the record as 'assignments,' although they are not so designated upon their face, nor by any indorsement thereon. We think that designation is a technical misnomer, if it is intended thereby to indicate that they constitute something less than a deed conveying realty. No prescribed form of words is essential

to convey real estate, but the instrument must contain sufficient words to show an intention to convey. 1 Devlin on Deeds, § 211; 9 Ency.L. (2d Ed.) 137, 138; 3 Wash.Real Prop. 329. 'Any words in a deed indicating an intention to transfer the estate, interest, or claim of the grantor will be sufficient as a conveyance, whether they be such as were generally used in a deed of feoffment, or of bargain and sale, or of release, irrespective of the fact of possession of grantor or grantee, or of the statute of uses.' *Field v. Columbet,* 4 Sawy. 523, Fed.Cas. No. 4764. In one of the instruments the operative words used are, 'transfer, sell, release,' in the others, 'transfer, sell, assign and set over.' These words are sufficient in the case of each instrument to constitute a conveyance. They show an intention to sell and transfer. The words 'transfer' and 'sell' are employed in each instrument. We think it clear that the instruments are sufficient and operative to convey the interest and title of the grantors to the water right described. * * * "

In the present case, we think the defendants conveyed all their interest in the Leavitt Spring to the plaintiffs' predecessors in interest. The terms of the 1962 agreement suggest as much. Furthermore, the defendants made no reservation of any water rights in the agreement.

■ We think the trial court was correct when it found:

### "II.

"That the Defendants did grant and convey to Plaintiffs' predecessors in interest all of Defendants' right, title and interest in and to the Irrigation Spring and the Leavitt Spring water rights.

### "III.

"That Plaintiffs are the sole and absolute owners in fee simple of, and are entitled to the exclusive use and possession of, the Irrigation Spring and the Leavitt Spring water rights.

### "IV.

"That neither the Defendants, nor their successors in interest, have any right, title, interest, claim or estate in the Irrigation Spring or Leavitt Spring water rights, or any part thereof, and that title to the Irrigation Spring and Leavitt Spring water rights should be forever quieted in Plaintiffs.

\*     \*     \*     \*     \*     \*

"IT IS THEREFORE HEREBY ORDERED, ADJUDGED AND DECREED that the Plaintiffs are the sole and absolute owners in fee simple of, and are entitled to the exclusive use and possession of the Irrigation Spring and Leavitt Spring Water Rights, that neither the Defendants, nor their successors in interest have any right, title, interest claim or estate in the Irrigation Spring or Leavitt Spring Water Rights or any part thereof and that title to the Irrigation Spring and Leavitt Spring Water Rights shall be, and is forever quieted in Plaintiffs."

### 4.

In their fourth argument, the defendants claim the plaintiffs should be equitably estopped from claiming ownership in the Leavitt Spring in fee simple. The basis of such argument is not totally clear.

One authority has defined equitable estoppel thusly:

"Equitable estoppel or estoppel by misrepresentation is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such

facts." 31 C.J.S. Estoppel § 59, p. 367 (1964).

See also the definition contained in Black's Law Dictionary, p. 483 (5th ed. 1979).

Since we have already ruled that the defendants conveyed all their interest in the Leavitt Spring to the plaintiffs' predecessors in interest, we need not address this issue at length. It is well settled that one who seeks equity must do equity, and must come into court with clean hands. *Lewis v. State Board of Control*, Wyo., 699 P.2d 822 (1985); and *Walker v. Board of County Commissioners, Albany County*, Wyo., 644 P.2d 772 (1982). The defendants make the following statements in their attempt to show they came into court with clean hands.

" * * * Surely the Defendants could not be considered as coming to the court with a claim not based in good faith and justice.

" * * * Defendants' sense of equity, justice, and good faith * * * defeats Plaintiffs' claims of well interference and ownership in fee simple of the Leavitt Spring."

But such bald assertions fly in the face of the facts of this case. Be it remembered that the defendants took the initial steps of drilling three more wells with rights junior to that of the plaintiffs, and drilled such wells in the immediate proximity of the Leavitt Spring. The development and use of these wells by the defendants rendered use of the Leavitt Spring impossible. And if that was not enough, the defendants in further pursuit of their alleged "good faith and justice" backfilled the Leavitt Spring, totally destroying the facility and rendering it useless. Then, the defendants offered to sell the plaintiffs water after they had destroyed the plaintiffs' legal source of water, and if they did not like such offer, the plaintiffs could instigate a lawsuit.

Perhaps the most telling example of the defendants' attitude in dealing with the plaintiffs is shown in the following trial testimony of plaintiff George Baker:

"Q. Did you make any complaint to Mr. Balben about your supply being diminished to the point of one-half gallon per minute during the summer of 1982?

"A. Yes, I did.

"Q. Where did you make that and when?

"A. Up at Brewery Springs, checking the flow coming out of the Brewery Springs at the tank, Mr. Balben was up there. I asked Mr. Balben, I said, something has got to be done, we don't have enough water to operate. He looked at me and smiled, and he said, how does it feel to be out of water, and I can sell you water for two cents a gallon, you can buy water from me for two cents a gallon.

"Q. He offered to sell you water for two cents a gallon, is that correct?

"A. That's correct.

"Q. At that time did you have occasion to view either of the tanks owned and controlled by Mr. Balben for storing water?

"A. Yes.

"Q. And those are the same tanks that you testified you observed during the water shortage of 1981?

"A. Yes.

"Q. What did you see at those tanks?

"A. I saw tremendous overflow from both. * * * "

Suffice it to say, the defendants do not even meet the minimum threshold requirements of clean hands to claim the doctrine of equitable estoppel should apply in light of their conduct. Surely the defendants cannot claim their conduct was "based in good faith and justice." Therefore, we decline to address the elements of equitable estoppel and their application, if any, to this case.

### 5.

We will address the defendants' fifth argument regarding attorney's fees in our disposal of Case No. 85-127.

### Case No. 85-127
### 1.

Both parties asked the court to award them attorney's fees based upon the following provision in the 1980 contract:

"14. In the event that any party or individual institutes an action at law to enforce any agreement hereunder, the prevailing party in such action shall be entitled to reasonable attorney fees and costs from the non-prevailing party."

However, the trial court denied both parties attorney's fees, finding:

"That the 1980 Contract provided that the prevailing party in any enforcement action should be entitled reasonable attorney's fees and costs. Considering the nature of the case, the revenues of the businesses, and the lack of showing of monetary damages, the Court is not able to find that the attorney's fees sought by either side are reasonable."

As noted earlier, the parties are in disagreement as to who actually prevailed under the court's judgment. The plaintiffs basically sought five counts of relief against the defendants:

"1. A declaration that Plaintiffs are the sole owners in fee simple of the Leavitt Spring water rights.

"2. An injunction enjoining Defendants from producing water from Defendants' Hillcrest Wells Nos. 1, 2, and 3 in a manner that interferes with production of water from the Leavitt Spring by Plaintiffs.

"3. An injunction to enjoin Defendants from interfering with Plaintiffs' rights of ingress and egress across Defendants' lands for maintenance and to rehabilitate the Leavitt Spring.

"4. A prayer for damages.

"5. A prayer for attorney fees and costs in accordance with the 1980 Contract."

The court did rule that the plaintiffs were the sole owners of the Leavitt Spring in fee simple, and that an injunction should issue barring the defendants from producing water from their wells which interferes with the plaintiffs' production of water from the Leavitt Spring, and that the defendants should be enjoined from denying to the plaintiffs the right of ingress and egress for the purposes of maintaining and rehabilitating the Leavitt Spring. However, the only relief the court denied the plaintiffs were monetary damages and attorney's fees. It is also noted that the defendants set forth a number of claims and defenses including a claim for attorney's fees and costs which were all denied by the court.

It is well settled in this state that attorney's fees cannot be recovered unless expressly provided for by statute or contract. *Bowers Welding & Hotshot, Inc. v. Bromley*, Wyo., 699 P.2d 299 (1985); and *Kvenild v. Taylor*, Wyo., 594 P.2d 972 (1979). The 1980 contract in this case expressly provided that "the prevailing party * * * shall be entitled to reasonable attorney's fees and costs." The court did award the plaintiffs costs, but refused to award them attorney's fees finding that neither party sought fees which were reasonable.

We think the plaintiffs are entitled to reasonable attorney's fees in this action. The contract expressly provided for such fees and the plaintiffs did substantially prevail on their claims for relief. The only relief the plaintiffs sought which was not awarded were monetary damages, which the court found the plaintiffs had failed to properly prove, and attorney's fees, which the court found unreasonable.

A trial court does have discretion to determine what fees are reasonable, but does not have discretion to rewrite a contract:

"It is one thing to interpret a contract or to discern the contractual intent of the parties pursuant to established legal rules, but it is another thing to make a contract for the parties. We are obliged to do the former, and we are prohibited from doing the latter." *McCartney v. Malm*, Wyo., 627 P.2d 1014, 1020 (1981).

In the case of *Greenough v. Prairie Dog Ranch, Inc.*, Wyo., 531 P.2d 499 (1975), we reversed and remanded a summary judgment awarding attorney's fees in a mortgage foreclosure action with instructions to the district court to determine what would be a reasonable attorney's fee in the matter. The trial court granted attorney's fees in a random amount by way of summary

judgment without making a specific determination as to what was reasonable for purposes of the specific case. This court found error in such a procedure and stated:

"This court has approved the rule that there must be some proof or evidentiary basis for a determination of a reasonable attorney's fee, *Combs v. Walters,* Wyo., 518 P.2d 1254, 1255; *Wallace v. Casper Adjustment Service,* Wyo., 500 P.2d 72, 73.

"There are certain factors which may be considered in the determination of a reasonable attorney's fee. These are the ability and quality of the attorney; the kind and complexity of the matter; the work actually performed and the manner in which it was done; and the result, *Schwartz v. Schwerin,* 85 Ariz. 242, 336 P.2d 144, 146; *Barnes v. Mid-Continent Casualty Company,* 192 Kan. 401, 388 P.2d 642, 646. The Code of Professional Responsibility of the American Bar Association (adopted August 12, 1969), in § DR 2–106, sets out eight suggested factors, some being a duplication of the above. 'The fee customarily charged in the locality for similar services' is one of the factors suggested as a guide in determining the reasonableness of a fee in this code. Unless and until there be some evidence in the record besides the customary fee, we see no basis for determination of the other important and necessary factors upon which the reasonableness of the fee should be based." *Id.,* at 503–504.

The plaintiffs presented evidence of the attorney's fees incurred by them by way of exhibits, affidavits, and oral testimony. The defendants did not object to the amount or reasonableness of the fees. The trial court concluded the fees sought by both sides were unreasonable.

We have previously set forth the evidence of defendants' conduct in creating the necessity of this litigation. The parties expressly agreed in the 1980 contract that a prevailing party was entitled to attorney's fees and costs. The trial court did award the plaintiffs $452.59 in costs according to the 1980 contract. We think it clear, then, that the plaintiffs are entitled to reasonable attorney's fees under the contract.[2]

Accordingly, we will reverse and remand this issue to the trial court for a determination as to what is a reasonable fee to award plaintiffs for prosecution of this case through trial.

2.

In their second issue, the plaintiffs also ask that they be awarded their attorney's fees on appeal. As authority for such award, the plaintiffs cite 25 C.J.S. Damages § 50, p. 785 (1966), which states:

"As a general rule, contract provisions for allowance of attorney fees are construed to include both trial and appellate fees."

There is ample authority in other jurisdictions for the proposition that if attorney's fees are expressly authorized by contract or statute, such provision also applies to fees incurred at the appellate level. *Matter of MCA,* 128 Cal.App.3d 225, 181 Cal. Rptr. 404 (1982); *Molyett v. Society National Life Insurance Company,* Fla.App. 2 Dist., 452 So.2d 1114 (1984); *Hobart v. Hale,* 132 Ill.App.3d 845, 87 Ill.Dec. 614, 477 N.E.2d 740 (1985); *Goodwin v. Iowa State Highway Commission,* Iowa, 369 N.W.2d 816 (1985); *Reynolds v. Wal Mart Stores, Inc.,* La.App., 445 So.2d 490 (1984); *Tafoya v. S & S Plumbing Company,* 97 N.M. 249, 638 P.2d 1094 (App.1981).

In this jurisdiction, we have previously allowed the award of attorney's fees for appellate work in a few limited instances. In *Hendrickson v. Hendrickson,* Wyo., 583 P.2d 1265 (1978), we awarded attorney's

**2.** It should be noted that when the trial court set aside the previous stipulation and judgment entered into by the parties, it did award the plaintiffs attorney's fees in the amount of $8,634.95, finding the fees were incurred by the plaintiffs in good faith, and that the fees were reasonable. These fees were awarded by the trial court after the parties entered into a stipulation to settle the dispute, but were forced to abandon the settlement when the defendants claimed their counsel had no authority to enter into the agreement.

fees incurred on appeal under § 20–2–111, W.S.1977, which allows the court to require either party "to pay any sum necessary to enable the other to carry on or defend the action." The court stated:

"The defendant-appellee seeks attorney's fees for her representation in this appeal in a divorce matter. Such fees are properly allowable. The record shows no affluence on her part and the plaintiff-appellant has cast upon her the burden of protecting her position. Under those circumstances, we will allow what we consider to be a reasonable sum of $300.00 to be applied against whatever appellee's attorney's fees may be payable at the rate of $100.00 per month, the first of which payments shall become due on September 1, 1978. *Heyl v. Heyl,* Wyo. 1974, 518 P.2d 28, reh. den. We consider that there was reasonable cause for appeal, so we shall deny any award of damages as requested by defendant-appellee pursuant to Rule 72(k), W.R.C.P. Our allowance of attorney's fees is pursuant to the court's authority to do so in divorce matters to assist the defendant in the continuing defense of the action, sec. 20–2–11 W.S.1977, and not as a penalty under Rule 72(k), W.R.C.P." *Id.,* at 1268.

In *Keller v. Anderson,* Wyo., 554 P.2d 1253 (1976), we taxed attorney's fees and costs as a sanction and penalty for a non-meritorious appeal. In *Johnson v. Hauffe,* Wyo., 567 P.2d 735 (1977), we dismissed an appeal for lack of timeliness and denied appellees' request for attorney's fees expressly leaving open the question of whether such fees could be recovered:

"Appellees have moved for an award of costs and attorney's fees on appeal. Because this is proper only in aggravated cases we hesitiate to impose such penalties, *Keller v. Anderson,* Wyo. 554 P.2d 1253. *Ordinarily this might be determined by an examination of appellants' presentation in determining whether it would be proper to make such award.* However, because appellees herein failed to raise or argue the dispositive issue in the appeal, i.e., timeli-

ness of the notice of appeal, we will not apply this practice herein. Appellees could have saved considerable time for themselves and for the judicial system if, instead of pursuing a response to the appeal on issues which we cannot reach, they would have asserted this crucial jurisdictional issue. *Appellees' expenses and attorney's fees would have been demonstrably less had this been called to the court's attention immediately upon the filing of this defective notice.* The motion for costs, attorney's fees, and expenses is denied.

"Appeal dismissed." (Emphasis added.) *Id.,* at 736.

■ In this case, the parties expressly agreed in the 1980 contract that the prevailing party be entitled to the award of attorney's fees. We think it logical then, in accordance with the great weight of authority, to apply such fees to those incurred on the appellate level.

"While in the majority of the cases in which the question of the propriety of awarding attorneys' fees on appeal, pursuant to a contractual provision, has been considered, the petition for such fees has either been granted by the appellate court, or the allowance of such fees by the trial court has been approved on appeal, the only general proposition for which these cases can be said to stand is that the contract of the parties is controlling and that, in these cases, the allowance of such fees came within the provisions of the contract. * * * " Annot., 52 A.L.R.2d 863, 864 (1957) "Contractual provision for attorneys' fees as including allowance for services rendered upon appellate review," and see A.L.R. Later Case Service on this topic.

We agree with the New Mexico court in the case of *Wyrsch v. Milke,* 92 N.M. 217, 585 P.2d 1098, 1105 (App.1978), wherein it held:

"On appeal, Adams claimed the right to an attorney fee from M & B for services rendered in this appeal. This claim was not decided in the original opinion.

"Paragraph 8 of the Adams-Milke real estate contract reads:

> " 'In the event of a default by any of the parties hereto, all expenses and attorney fees of all other parties incident to such default shall be paid by the defaulting party.'

"Of course, this clause is valid, *Budagher v. Sunnyland Enterprises, Inc.,* 90 N.M. 365, 563 P.2d 1158 (1977), *Shortle v. McCloskey,* 39 N.M. 273, 46 P.2d 50 (1935), and a contract which provides for payment of attorney fees by a defaulting party does cover attorney fees on appeal. *First National Bank of Santa Fe v. Wood,* 86 N.M. 165, 521 P.2d 127 (1974); *Cabot v. First National Bank of Santa Fe,* 81 N.M. 795, 474 P.2d 478 (1970). The Court's decision in *Cabot* is the majority approach to this issue."

We think the appellate court should determine the proper attorney fees to be awarded on appeal. The appellate court is in a better position to review the appellate work done, and then set a reasonable fee. In *Rubeling v. Rubeling,* Wyo., 406 P.2d 283, 285-286 (1965), this court stated:

> "Should the procedure [whereby the supreme court awards appellate attorney fees] be considered exclusive? We think it should. Public policy and the public interest require such a holding. In the first place, appeals to the supreme court are from a judgment or 'final order' of the district court. Except for the performance of further duties assigned to him under the rules or statutes, the jurisdiction of the trial judge should end with the entry of the final judgment or order appealed from.
>
> "This is in keeping with the practice followed by federal courts under the federal rules. See *Walleck v. Hudspeth,* 10 Cir., 128 F.2d 343, 344; *Thompson v. Harry C. Erb Inc.,* 3 Cir., 240 F.2d 452, 454; and 3A Barron and Holtzoff, Federal Practice and Procedure, § 1558, p. 85 (Rules Edition, 1958).
>
> *"There is good reason for the supreme court rather than the district court to pass upon the need for ordering payment of an attorney's fee in an appeal, and the supreme court is in a better position to say what, under the circumstances, is a reasonable and proper fee for legal service in that court.* Moreover, it would not be proper for the trial court to control the appeal, and there would be some instances in which it could control whether an appeal is carried by a husband to the supreme court, merely by deciding that an attorney's fee should be paid to appellee and by fixing the amount thereof." (Emphasis added.)

Although *Rubeling* is a divorce case, we think the rationale is applicable here. The district court is normally not in a position to award appellate attorney's fees simply because the appellate fees are not incurred at the trial level. The appeal must be from a final order or judgment, and the trial court's jurisdiction should end once such is rendered.

Furthermore, to award appellate fees here avoids the circuitous action of sending the case back to the district court for a determination of a proper appellate fee, and then reviewing the fee awarded if that determination is appealed.

Accordingly, appellate attorney's fees will be awarded by this court to the plaintiffs upon proper documentation.

Affirmed in part, reversed in part, and remanded to the district court for proceedings not inconsistent with this opinion.

THOMAS, Chief Justice, specially concurring and dissenting.

I am in accord with the disposition of these cases in the majority opinion save for the question of attorney fees on appeal. Paragraph 14 of this contract, which also is quoted in the majority opinion, provides:

> "14. In the event that any party or individual institutes an action at law to enforce any agreement hereunder, the prevailing party in such action shall be entitled to reasonable attorney fees and costs from the non-prevailing party."

This is a contractual right to attorney's fees within the rule promulgated in *Bowers*

*Welding & Hotshot, Inc. v. Bromley,* Wyo., 699 P.2d 299 (1985); and *Kvenild v. Taylor,* Wyo., 594 P.2d 972 (1979). The plaintiffs are entitled to enforce this provision of their contract like any other provision.

If the obligation is not honored by the defendants then the plaintiffs should be permitted to enforce it in the district court and to establish the reasonable attorney's fees and costs for which they are entitled to be compensated. That is an issue of fact. If the right is controverted, it is peculiarly appropriate for that issue to be disposed of in a fact-finding court. I can discern no reason why the reasonable attorney's fees and costs provided for in the contract would not include those on appeal as well as those relating to the trial of the action. I do not believe that this court, even with the support suggested by Justice Raper, Retired, in his concurring and dissenting opinion should involve itself in the resolution of this issue of fact. This case is distinguishable from those relied upon in the majority opinion, and the issue in this case should be resolved in the trial court.

RAPER, Justice, Retired, concurring in part and dissenting in part.

I concur in all of the opinion of the majority except that part which in my view offers no useful guidance to counsel. It is agreeable with me and proper that plaintiffs recover reasonable attorney's fees for the appellate work of their counsel, to be fixed by this court, for the reasons stated in the majority opinion. My objection goes to the vagueness of "upon proper documentation."

There is no useful evidence in the record of what should be a reasonable attorney's fee for the professional work of defending an appeal by defendants and the forcing an appeal by plaintiffs to collect reasonable attorney's fees as provided by contract. Nor are there available empirical studies made of what attorney's fees are normal for handling an appeal, the going rate, so to speak, based on the considerations necessary in fixing a fee for legal services rendered.

This court has previously and in this case set a rule applying to district courts as to how they shall fix attorney's fees. The determination of the amount of reasonable attorney's fees is a factual question to be decided upon evidence and facts in each individual case. *Greenough v. Prairie Dog Ranch, Inc.,* Wyo., 531 P.2d 499 (1975), and authority there cited. Greenough sets out various factors to be considered in the determination of reasonable attorney's fees. These are ability and quality of the attorney; the kind and complexity of the matter; the work actually performed and the manner in which it was done; and the result. Greenough also referred to the Code of Professional Responsibility of the American Bar Association. Those rules have been adopted by this court as part of the Amended Rules Adopted by the Supreme Court of Wyoming Providing for the Organization and Government of the Wyoming State Bar, OR2–106, which sets out the following guides:

> "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> "(3) The fee customarily charged in the locality for similar legal services;
>
> "(4) The amount involved and the results obtained;
>
> "(5) The time limitations imposed by the client or by the circumstances;
>
> "(6) The nature and length of the professional relationship with the client;
>
> "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> "(8) Whether the fee is fixed or contingent."

This court ought to be bound in the matter of fixing attorney's fees by the same rule it imposes on district courts. I would have referred the matter to the district

court for the taking of evidence relevant to the fixing of a fee for work done on this appeal by plaintiffs' counsel and referring such evidence back to this court so that it has some sound basis to fix a fee.

This is particularly appropriate here because the case is going back to the district court for the purpose of fixing fees for trial work. The district court can at that time take evidence appropriate to the fixing of appellate fees consistent with the standards set out in *Greenough* and Rule OR2–106, and without recommendation refer such evidence to this court for its use in establishing the appellate fee.

While this may appear clumsy, this court has in practice refrained from itself taking evidence in that it is not designed or equipped to do so. Rule 20, W.R.A.P., provides:

"Whenever a cause over which the Supreme Court has original jurisdiction is pending therein, the court may direct any district judge of the state to conduct a hearing thereon at any county seat in the state. The judge conducting said hearing shall make findings of fact and conclusions of law and shall forward the entire proceedings and record properly certified to this court for final determination in the cause."

Since this court has decided it should fix the fee, there is some resemblance to an original proceeding. It must be conceded that the rule probably refers to such original proceedings as habeas corpus and prerogative writs requiring evidence for disposition, not otherwise available, but Rule 20, W.R.A.P., does disclose a policy.

This court's experience in the past with statements of time and charges by counsel has been less than satisfactory. If this court requires "documentation," it ought to state with some particularity what the term means.

I would refer the matter to the district court as indicated above.

* Reassigned to Cardine, J., February 18, 1986.