No. 47,230

Marcus R. Sloan, *Appellee*, v. Employers Casualty Insurance Company, Dallas, Texas, *Appellant*.

(521 P. 2d 249)

Opinion filed April 6, 1974.

*Richard I. Stephenson,* of Fleeson, Gooing, Coulson and Kitch, of Wichita, argued the cause, and *Donald R. Newkirk,* of the same firm, was with him on the brief for the appellant.

*John C. Frank,* of Wichita, argued the cause, and *Robert L. Nicklin* and *Raymond W. Baker,* also of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: The issue in this case is whether an insurance company refused to pay its policy holder's loss without just cause or excuse, so as to render it liable for attorney fees under K. S. A. 40-256.

The claimed loss consisted of damage to the plaintiff's pickup truck, medical expenses, and personal injuries, all incurred in a collision with an uninsured motorist. The claim was made under

the uninsured motorist endorsement of plaintiff's automobile liability policy. At trial, on the issue of damages only, a jury awarded plaintiff judgment against the defendant insurance company for $7200. On post-trial motion the trial court found that the company's previous abortive efforts to settle plaintiff's claim amounted to a refusal to pay without just cause or excuse, and awarded plaintiff attorney fees totalling $4600. The company has appealed from that award.

Plaintiff's claim for attorney fees was based on the company's claimed indifference to his claim prior to his filing suit. After filing there were a number of offers and counter-offers, with plaintiff's demands constantly escalating. Plaintiff does not rely on these negotiations. He recites them in his brief, but brushes them aside by observing, "The critical period, however, was the time prior to trial. The law is quite clear that it is the insurer's activity or lack thereof *prior to commencement of the action* which determines whether or not a refusal to pay is without just cause or excuse." (Emphasis added.)

In support of this position plaintiff cites *Barnes v. Mid-Continent Casualty Co.,* 192 Kan. 401, 388 P. 2d 642, and *Attebery v. M. F. A. Mutual Ins. Co.,* 191 Kan. 178, 380 P. 2d 327. In the first we said, "In order to secure full compensation for her damages, the *plaintiff was conmpelled to bring this action.*" (P. 405. Emphasis added.) In the second we said the allowance was proper "Where an insured was *forced to file an action* to recover for the loss of an automobile. . . ." (Syl. ¶ 1. Emphasis added.) While these statements fall short of a square holding in accord with plaintiff's position, the implication is clearly there, and we are prepared to so hold at this time.

The statute speaks of a company which has "refused" to pay. This surely contemplates a demand which has been denied. During the time presuit negotiations are proceeding in good faith a company cannot be said to have "refused" to pay. Hence the precipitous filing of suit, before a company has had a reasonable opportunity to select its course, cannot form the basis of a claim for attorney fees. On the other hand, all the good faith and settlement offers in the world *after* suit is filed will not immunize a company from the consequences of an unjustified refusal to pay which made the suit necessary. This concept is borne out by the "proviso" of the statute, which forbids the allowance of attorney fees where the

recovery is no more than any amount tendered "before the commencement of the action."

The company doesn't really quarrel with this proposition (although it does seek to demonstrate its good faith by pointing to extensive post-filing negotiations, including a $2750 offer which plaintiff's counsel said he would recommend but which was not accepted.) Rather, its position is that before suit was filed it was lulled into inaction by plaintiff's counsel—or, as appellant puts it in its brief, "It was plaintiff's lawyers who led defendant down the primrose path of litigation. . . ."

Since the critical period is the time before suit, in order to evaluate the parties' respective claims it is necessary to examine the events between June 23, 1969, the date of plaintiff's injuries, and June 4, 1971, the date suit was filed. There is really not much to examine; all the activity took place in the three months between May 21, 1970, and August 28, 1970.

The first notice to the company of plaintiff's injuries reflected in the record is a letter from plaintiff's counsel to plaintiff's insurance agent dated May 21, 1970, almost a year after the accident:

"Please be advised this firm represents Mr. Sloan in connection with injuries he and his son sustained in an auto accident June 23, 1969.

"The vehicle which [s]truck Mr. Sloan's vehicle was uninsured at the time of the accident.

"As a consequence, we must now make claim against the Uninsured Motorist Coverage provided the Sloans in their policy of insurance which they carried with Employers Casualty Insurance Company.

"Please have a representative of that company contact this office as soon as possible so we might explore settlement possibilities."

Plaintiff asserts in this court that the company had earlier actual notice of his injuries. This claim is apparently based on the fact that plaintiff did yard work for Robert Luckey's real estate business, and after the accident was unable to do the same kind of work for him. Luckey was also the insurance agent who wrote plaintiff's policy, and the person to whom the claim letter was written. If by this contention, plaintiff means to suggest that any time an insurance agent acquires knowledge of some injury to a policyholder it becomes the company's duty to initiate an investigation and offer a settlement—without any claim being made—we reject the suggestion. We believe the insured has some duty to give notice to his company of his loss, and of the fact that he is making a claim under his policy, before the company is obligated to move. In this

case we cannot convert whatever knowledge Luckey may have had of plaintiff's condition into a claim against the company under plaintiff's uninsured motorist coverage.

There is certainly no hint in the demand letter of any prior notice to either Luckey or the company, much less of any prior claim under the policy.

The claim was in due course referred through channels to Andy W. Ray, an agent for an adjusting firm in Wichita. Ray promptly made contact with plaintiff's counsel, and received a letter dated July 8, 1970, from David Egan, one of plaintiff's lawyers:

"Dear Mr. Ray:

Please be advised that I will be handling this matter for our client, Marcus Sloan.

As you may know, Mr. Sloan's vehicle was struck from behind by a truck driven by Osa Patterson, a colored male, 2360 Burns, Wichita, Kansas. At the time of the accident Mr. Sloan was stopped for a red light on Washington at Central here in Wichita. Mr. Patterson has given us a statement advising the vehicle he was driving at the time was uninsured.

Mr. Sloan has incurred the following specials to date:

| | |
|---|---|
| Dr. Reazin | $51.00 |
| Wesley Hospital | 26.25 |
| Property Damage | 52.56 |
| Cab Fare | 14.85 |
| Total | $144.66 |

Enclosed are the itemized statements and bills we have in our file.

We would recommend a $1,500 settlement to Mr. Sloan but must advise this is our bottom dollar settlement demand. Please contact me at your convenience regarding this case."

Matters stalled at this point, and on July 30, 1970, Ray filed a report with the company stating that his efforts to discuss settlement with Egan had been unavailing because Egan said some other associate in the office would be handling the claim. As of that date Ray was waiting to find out which lawyer he should talk to.

He was apparently still waiting when, on August 28, 1970, Egan wrote again, saying:

"Dear Mr. Ray:

After further consultation with our client and after reevaluating our file, we have come to the conclusion that Mr. Sloan has been damaged in excess of $1,500 which was the figure we had previously forwarded to you for settlement purposes. In short we are at this time withdrawing our offer to settle this case for $1,500 and *will advise you at a later date as to the amount for which Mr. Sloan will settle.*

*Thank you for your attention to this matter."* (Emphasis added.)

The parties are agreed that this was the last contact between plaintiff and the company until, some nine months later, plaintiff filed suit. Plaintiff made no further demands, as counsel had indicated he would do, and the company made no further investigation or settlement overtures.

The real issue is, who had the burden of taking the initiative during those nine months?

Plaintiff says that the company had a duty to investigate his claim in good faith, citing such cases as *Lord v. State Automobile & Casualty Underwriters*, 208 Kan. 227, 491 P. 2d 917, and *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 470 P. 2d 756. It did not do so. Further, he says he was forced to file suit when he did, without further demand, because the statute of limitations on his claim against the uninsured tortfeasor would expire in less than three weeks. His contention is that it was incumbent on the company to initiate further settlement negotiations, despite what plaintiff's counsel had written.

The company counters by pointing out that it never "refused" to pay plaintiff's claim. True, it didn't jump at plaintiff's first demand, but its efforts to even discuss it were frustrated by the uncertainty in the office of plaintiff's counsel as to who was handling the case. Before there could be any discussion the offer was withdrawn, and it never had an opportunity to consider a second demand. An insurance company's duty to investigate, under our cases, is to do so "before finally refusing to pay." (*Lord v. State Automobile and Casualty Underwriters*, supra, at 234.) The company says it never had a claim presented which it *could* refuse.

As to its investigation, the company points out that during the nine months it waited for the promised new settlement figure the company knew, from police reports and Egan's first letter: (1) that plaintiff had been struck in a rear-end collision; (2) that he claimed injury to his spine and pelvis; (3) that he had seen a doctor four times in the six weeks immediately following the accident, but not since; (4) that he was not hospitalized; (5) that his total medical bills were $77.25, mostly for X-rays; (6) that damage to his vehicle was $52.56; and (7) that his counsel's first evaluation of his total claim was $1500. With this information at its disposal, it says, it was justified in putting this claim "on the back burner" while awaiting the promised further word from plaintiff.

On balance, we think the company's position has far the better of it. Plaintiff's first demand letter was calculated to lead the company to a reasonable belief that this accident was a garden variety rear-ender. Insurance companies and personal injury lawyers evaluate such cases every day. There was nothing to indicate the plaintiff had any serious or permanent personal injury requiring special investigation. While counsel's letter withdrawing his first offer had some ominous overtones, it contained what appeared to be an unconditional promise to make the next move. We think the company was entitled to rely on such a promise by counsel.

We are not impressed by plaintiff's assertion that he was forced to file suit by the imminence of the bar of the statute of limitations. There is even some question whether the running of the statute on his tort claim would in fact have barred his contract action under the policy, but we need not decide that issue. The fact remains that when he filed suit, without notice, he still had nineteen days under the tort statute. It seems to us that was ample time to follow through on the promised second demand, by telephone or even by letter.

Had he done so and been rebuffed he could then have made a legitimate claim that the company "refused" to pay his loss. The issue then would have been whether the refusal was "without just cause or excuse." That, in turn, would have required consideration of such factors as whether his demand was exorbitant, whether the company made a counter-offer, and if so whether it represented a reasonable, good-faith assessment of the claim. Since he did not make a demand which was refused, we are not called upon to determine the question of just cause or excuse.

In short, the burden of the initiative in this case was on plaintiff because he had, through counsel, voluntarily assumed that burden. In his letter of withdrawal he did not even solicit a counter-offer; he volunteered to move out himself. Having chosen that course, plaintiff cannot later complain because the company took him at his word.

By our holding in this case we do not mean to retreat from our position that an insurance company presented with a claim has a duty to make a good faith investigation before finally refusing to pay, or to suggest that dilatory tactics in processing a duly presented claim may not constitute a "refusal" to pay. Neither do we mean to depart from our usual standards of appellate re-

view. Whether there was a refusal to pay, and if so whether it was "without just cause or excuse," are both questions of fact. They are to be determined in the first instance by the trial court, subject to review here as are other factual matters. What we do hold is that on the facts as they appear in this record there was no evidence that the defendant ever "refused" to pay plaintiff's loss, in the sense that that word is used in the statute, because there was never any demand before it which could be refused.

It follows that it was error to make an allowance of attorney fees in this case, and the orders making such allowance are reversed.

APPROVED BY THE COURT.