(791 P.2d 1343)

No. 63,280

CHARLENE SMITH, *Plaintiff/Appellant*, v. SHERRIE BLACKWELL, *Defendant*, and FARMERS INSURANCE COMPANY, *Garnishee/Appellee*.

Opinion filed November 17, 1989.

*John E. Shamberg, Lynn R. Johnson,* and *G. Gordon Atcheson,* of Shamberg, Johnson, Bergman & Morris, Chartered, of Overland Park, for the appellant.

*Douglas M. Greenwald* and *Frank D. Menghini,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellee.

Before LARSON, P.J., RULON and LEWIS, JJ.

LARSON, J.: Charlene Smith appeals the district court's denial of her motion for attorney fees pursuant to K.S.A. 40-256.

This garnishment action arises out of an automobile accident on November 30, 1984, in Wyandotte County. Farmers Insurance

Company's insured, Sherrie Blackwell, crossed the center line and struck a car driven by Charlene Smith, causing her serious and disabling personal injuries. Smith's mother, a passenger in her car, was killed, and Blackwell was critically injured by the severe impact.

Smith sustained fractures of three ribs, multiple contusions to her face, body, and both knees, broken teeth, a nasal septal deviation, and a closed head injury resulting in damage to the olfactory nerve with impairment of her senses of smell and taste. She was hospitalized for a week and incurred medical expenses of $3,614.39. She incurred lost wages from the date of the injury until May 31, 1985, in the sum of $4,541.76. An ear, nose, and throat specialist, Dr. Luke Dlabal, opined the nasal septal deviation could be corrected at a surgical and hospital expense of approximate $2,500. The impairment of the senses of smell and taste was deemed permanent.

Vernon James, a claims adjuster for Farmers, characterized the accident as "a case of serious injuries and clear liability."

On August 10, 1985, Smith's attorney wrote Farmers offering to settle Smith's injuries for the payment of Blackwell's policy limits of $25,000. Smith's attorney stated he valued her claim to be worth $50,000.

James had never adjusted a claim involving an allegation of loss of senses of taste and smell and requested additional medical information, which Smith's counsel furnished. James did not request an independent medical evaluation.

James estimated in his claims status report of December 10, 1985, that the settlement value of Smith's claim was $20,000. He wrote that, although her attorney would not take less than the policy limits, he did not think the case was worth that much. He did state that if it cost $5,000 to try the case, Smith's claim could be worth the $25,000 policy limits.

James did not advise Blackwell of the offer to settle for the policy limits or advise her of any of the settlement discussions or negotiations.

Smith's attorney again wrote James on December 13, 1985, advising that if the case was not settled by December 23, 1985, or significant progress made toward settlement, the offer would

be withdrawn and suit would be filed for recovery of Smith's damages.

On January 6, 1986, although Farmers had given him authority to settle the case for $20,000, James verbally offered $12,500 to settle Smith's claim and confirmed this offer by a letter.

Smith's lawyer, on January 13, 1986, wrote James withdrawing the offer to settle for the policy limits and stated Smith would proceed with suit and expected the insured and/or insured's carrier to pay any judgment in excess of the policy limits. James made no further attempt to settle the claim.

After Smith sued Blackwell on February 24, 1986, Farmers retained outside counsel, who advised the probable verdict range at trial was $22,500 to $30,000. Based upon this recommendation, in March of 1986 Farmers offered to settle for the policy limits, which was rejected by Smith's counsel.

The case proceeded to trial and the jury rendered a verdict in favor of Smith in the amount of $50,000. Farmers did not appeal and paid its $25,000 policy limits into court.

On May 6, 1987, Smith served a garnishment order on Farmers, seeking to collect the amount of judgment in excess of the policy limits. Farmers answered, denying liability for the claims against Blackwell. After a hearing and introduction of evidence, the trial court found Farmers had failed to exercise good faith and was negligent in failing to settle the claims against Blackwell within the policy limits. In this finding the trial court based its holding on: (1) the strength of the claimant's case based on the issues of liability and damage; (2) failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; (3) failure of the insurer to inform the insured of a compromise offer to settle within the policy limits; (4) the amount of financial risks to which each party was exposed in the event of a refusal to settle; (5) a settlement offer of $12,500 at the time authority to settle for $20,000 existed and the likelihood of recovery in excess of the policy limits; (6) failure to obtain an independent medical evaluation and evidence of damages payable for the loss of the senses of smell and taste; (7) failure to exercise a continuing duty to attempt settlement within policy limits prior to suit being filed.

Judgment was rendered against Farmers for an additional $25,000, which Farmers paid without appealing.

Smith then moved for attorney fees pursuant to K.S.A. 40-256 as a result of the garnishment proceedings. The trial court heard arguments and denied the motion, finding the case had presented several novel issues providing "just cause or excuse for Farmers' refusal to pay the excess judgment." Smith appeals. We reverse.

Although the trial court characterized three issues as novel and of first impression, we believe there are well-established and longstanding precedents which properly justified the earlier finding of bad faith and negligence on Farmers' behalf.

The three issues discussed by the trial court in denying the request for attorney fees were:

(1) Whether an insurer can be held liable for an excess judgment for failure to offer policy limits prior to commencement of litigation;

(2) whether an insurer can "cure" its negligent failure to offer its policy limits by offering such limits shortly after commencement of suit; and

(3) whether the measure of damages should be payment of the excess judgment or reasonable attorney fees to the time of the offer of the policy limits.

As early as 1920, the Kansas Supreme Court held that an insurer was liable for the full amount of the insured's loss, irrespective of policy limits, if it was negligent in conducting the defense for the insured. *Anderson v. Surety Co.*, 107 Kan. 375, 191 Pac. 583 (1920). In *Bennett v. Conrady*, 180 Kan. 485, 489-91, 305 P.2d 823 (1957), for the first time, bad faith as well as negligence was involved. *Bennett* held an insurer is liable for the full amount of its insured's resulting loss, even if that amount exceeded the limits of the policy, for negligence or bad faith in defending or settling an action against the insured.

By the time the landmark case of *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969), was decided, bad faith and negligence had tended to coalesce to the point that liability could be imposed against an insurer on either theory.

The trial court herein correctly and properly recognized and applied the "equality of consideration" factors which *Bollinger* adopted from *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d

679, 689, 319 P.2d 69 (1957), requiring insurers to consider the following factors:

" '[1] the strength of the injured claimant's case on the issues of liability and damages; [2] attempts by the insurer to induce the insured to contribute to a settlement; [3] failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; [4] the insurer's rejection of advice of its own attorney or agent; [5] failure of the insurer to inform the insured of a compromise offer; [6] the amount of financial risk to which each party is exposed in the event of a refusal to settle; [7] the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and [8] any other factors tending to establish or negate bad faith on the part of the insurer.' " 202 Kan. at 338.

*Bollinger* makes no distinction between an insurer's pre-suit conduct and its post-suit conduct in adjusting or defending a claim. The fiduciary relationship of the insurer and the insured imposes a duty upon the insurer to make reasonable efforts to negotiate a settlement of a claim against the insured. The insurer is obligated to initiate settlement negotiations regardless of the actions of the injured party. *Rector v. Husted*, 214 Kan. 230, 519 P.2d 634 (1974). In *Rector*, like here, liability was admitted and the Kansas Supreme Court stated: "[I]t was incumbent upon the appellant . . . to make a good faith attempt at negotiating a settlement. . . . Fair and equal consideration of the insured's vulnerable position demands that reasonable attempts be made to protect him from such exposure." 214 Kan. at 241-42.

Farmers received a pre-suit policy limits demand and had the identical duty to Blackwell as exists when suit has been filed. In settling and defending actions against an insured, an insurer must act in the best interests of its insured. *Spencer v. Aetna Life & Casualty Ins. Co*, 227 Kan. 914, 920, 611 P.2d 149 (1980). This is not a novel issue or one in which Kansas law is not settled.

The trial court secondly suggests it is novel to argue that Farmers might "cure" its previous negligent conduct and bad faith by following the advice of counsel and offering the policy limits shortly after commencement of suit. This argument is of no benefit to Farmers. The Kansas Supreme Court has said: "[A]ll the good faith and settlement offers in the world *after* suit is filed will not immunize a company from the consequences of an unjustified

refusal to pay which made the suit necessary." *Sloan v. Employers Casualty Ins. Co.*, 214 Kan. 443, 444, 521 P.2d 249 (1974).

If an insurer were permitted to "cure" an earlier breach of a fiduciary duty, the policy of encouraging an insurer to exercise due care and attempt to settle claims in a fair and expeditious manner would be undermined. This issue is neither new nor novel and does not create just cause or excuse for failure to pay the excess judgment.

There was ample time given for a full and complete investigation by the insurer after the offer to settle for the policy limits was made on August 10, 1985, before the suit was filed on February 24, 1986. Smith's counsel furnished all requested medical reports, agreed to extend time if significant progress toward settlement was being made, and did not file suit "precipitously." The bad faith and negligence of Farmers in the settlement dealings goes hand in hand with its refusal without just cause or excuse to pay the full amount of the loss.

The rule governing the third suggested issue of difficulty in determining the measure of damages is clear. The breach of the duty of good faith and due care renders an insurer liable for the full amount of the insured's loss. *Covill v. Phillips*, 452 F. Supp. 224, 226 (D. Kan. 1978); *Bollinger v. Nuss*, 202 Kan. at 332. The law on this point has never been seriously challenged and offers no basis for the trial court's refusal to allow attorney fees.

To reach a final decision in this case, it is of critical importance to realize that the right to claim attorney fees, although initially belonging to Blackwell, Farmers' insured, became Smith's through the garnishment proceedings. *Gilley v. Farmer*, 207 Kan. 536, 544, 485 P.2d 1284 (1971), was a bad faith and negligence garnishment action by an injured party with an excess judgment in which the Kansas Supreme Court quoted *B. & M.R. Rld. Co. v. Thompson*, 31 Kan. 180, 196, 1 Pac. 622 (1884): " 'Garnishee proceedings mean this: the creditor takes the place of the debtor, "Only this and nothing more." The former takes only that which the latter could enforce.' "

The applicable wording of K.S.A. 40-256 is as follows:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full

amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action . . . ."

To give Smith's argument the proper perspective, we must view the facts and circumstances and test Farmers' deficiencies as if Blackwell were personally challenging Farmers' handling of Smith's claim and seeking recovery for the fees she would be obligated to pay an attorney for doing so.

Blackwell's exposure to personal liability for the amount of the judgment in excess of $25,000 arose when the judgment became final. At that point, by the garnishment proceedings, the two issues for determination became:

(1) Was Farmers guilty of negligence and bad faith in its handling of Smith's claim against Blackwell?

Once that was determined affirmatively, the second issue becomes:

(2) Was Blackwell (Smith by virtue of the garnishment) entitled to recover her attorney fees or did Farmers refuse payment because of just cause or excuse?

Whether an insurance company's refusal to pay is without just cause or excuse is determined on the facts and circumstances in each case. *Watson v. Jones*, 227 Kan. 862, 871, 610 P.2d 619 (1980). The circumstances confronting the insurer when payment of a loss is denied determines the question, and the circumstances are to be judged as they would appear to a reasonably prudent person having a duty to investigate in good faith and to determine the true facts of the controversy. *Brown v. Continental Casualty Co.*, 209 Kan. 632, Syl. ¶ 5, 498 P.2d 26 (1972).

Generally speaking, it is a question for the district court as the trier of facts to determine whether an insurance company has refused to pay the full amount of an insured's loss "without just cause or excuse," thereby subjecting itself to payment of attorney fees under K.S.A. 40-256. *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 564, 470 P.2d 756 (1970). Although two claims representatives of Farmers, Vernon James and Richard H. Holt, testified briefly at the hearing on the motion for attorney fees, the material facts surrounding Farmers' actions do not involve the credibility of the witnesses, and the controlling facts and exhibits allow us on appeal to examine and consider the evidence

as the court did below and determine what the uncontroverted evidence establishes as a matter of law. *Koch*, 205 Kan. 561, Syl. ¶ 5; see *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 706, 366 P.2d 219 (1961).

Smith argues the trial court's decision holding Farmers liable for the excess judgment mandates the conclusion that Farmers acted without just cause or excuse in refusing to pay the excess judgment. We know of no reported Kansas case so holding as a matter of law. Successful prosecution of a suit by an insured does not automatically result in entitlement to attorney fees. *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, 238, 729 P.2d 1160 (1986); *Harper v. Prudential Ins. Co. of America*, 233 Kan. 358, 372, 662 P.2d 1264 (1983).

Although it can be convincingly argued that a finding of negligence *and* bad faith wipes out any basis upon which just cause or excuse could exist, we are compelled to follow existing precedent and make this determination based on the facts and circumstances of each case.

Because Farmers has not appealed the imposition of excess liability, all of the findings of fact are conclusive for purposes of determining whether Farmers refused "without just cause or excuse" to pay the full amount of Blackwell's (Smith's) loss.

The trial court's findings and judgment of July 21, 1988, finding bad faith and negligence on Farmers' part also show the lack of just cause or excuse for its actions as follows:

(1) Farmers admitted liability. Two specialists corroborated Smith's permanent impairment of smell and taste. The impact was severe. Special damages exceeded $8,000. Additional surgery was indicated. Smith had a strong case.

(2) Farmers failed to properly investigate Smith's medical condition. An independent medical evaluation was not requested. No attempt was made to refute the findings and conclusions of Smith's medical reports. An inadequate evaluation of the case in the eyes of a jury existed.

(3) Farmers never informed Blackwell of Smith's offer. Farmers appeared to give no consideration to its insured's rights and position. Farmers did communicate with Blackwell's father regarding settlement (for the policy limits) of a companion

claim, but acted without just cause and excuse to its own policy holder to which it owed a fiduciary duty.

(4) The financial risk to Farmers after it valued Smith's claim at $20,000 on December 10, 1985, was slight while the valuation of Smith's counsel of the claim as being worth $50,000 (which happened to be the amount of the jury verdict) left $5,000 of its policy limits at risk and $25,000 of its insured's assets at risk. Farmers should have recognized the likelihood that Smith would recover a judgment in excess of the $25,000 policy limits.

(5) Offering $12,500 when authority of $20,000 existed was not only negligent and in bad faith but without justification or excuse. A reasonably prudent insurer would and should have offered its policy limits of $25,000 rather than expose its insured to an excess judgment. Farmers had the obligation to pursue settlement but made no reasonable effort to do so.

The facts and circumstances show the failure of an insurance company to make a sufficient investigation or obtain necessary independent medical information to properly evaluate the claim; a gross and unpardonable failure to notify its insured that an offer to settle within the policy limits had been received and to inform the insured about the settlement process at a time when her interests were at risk; a failure to give any consideration of the financial risks to the insured; a failure to make any effective attempt to settle; a failure to negotiate reasonably or go forward with settlement action; and finally, the failure to recognize and evaluate its numerous omissions and commissions which made defense of the bad faith and negligence action for recovery of the excess verdict untenable.

When we consider all the facts and circumstances, we hold, as a matter of law, that Smith, by stepping into the shoes of Blackwell, is entitled to reasonable attorney fees for prosecuting the garnishment action. There was no just cause or excuse for Farmers' actions. The decision of the trial court is reversed and reasonable attorney fees are ordered.

The request for a 3.5 multiplier of Smith's counsel's time is unrealistic and unreasonable. This was recognized and admitted by her counsel at oral argument. The trial court is directed to establish and order a reasonable fee for services in the trial court.

See *Farmco, Inc. v. Explosive Specialists, Inc.*, 9 Kan. App. 2d 507, 517, 684 P.2d 436 (1984); *Hochman v. American Family Ins. Co.*, 9 Kan. App. 2d 151, 155, 673 P.2d 1200 (1984); Code of Professional Responsibility, DR 2-106 (1988 Kan. Ct. R. Annot. 153).

Smith has also requested allowance of attorney fees for legal services required to perfect and pursue this appeal. Our decision herein and the specific wording of K.S.A. 40-256 that "proceeding[s] upon appeal" are included in the services justifying compensation require allowance of attorney fees upon appeal. See *Matthews v. Travelers Insurance Co.*, 212 Kan. 292, 300, 510 P.2d 1315 (1973).

Smith's counsel is directed to submit to us a statement showing the services performed upon appeal, the time expended, and a requested fee. Farmers' counsel shall have ten days in which to respond to Smith's counsel's filing. We will by separate order set the attorney fees to be allowed upon appeal, which shall become part of the judgment to be granted by the trial court.

Reversed and remanded for further action in accordance with this opinion.