James STEWART and Gloria Stewart, Plaintiffs,

v.

MITCHELL TRANSPORT, INC. and Larry G. Ramsey and Insurance Corporation of Hannover and Insurance Company of Hanover, Defendants.

No. 01–2546–JWL.

United States District Court, D. Kansas.

April 5, 2002.

Lawrence D. Flick, Prairie Village, KS, for Plaintiffs.

Roger W. Warren, Jeffrey C. Baker, Sanders Conkright & Warren LLP, Kansas City, MO, for Defendants.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This action stems from an automobile collision where defendant Larry Ramsey's

tractor-trailer "rear-ended" plaintiff James Stewart's pickup truck. Plaintiffs allege that defendant Larry Ramsey and Mitchell Transport, Inc. were negligent, failed to "provide safe and adequate service" as required by 49 U.S.C.A. § 14101(a), violated 49 C.F.R. § 392.2 by failing to comply with local law and failed to comply with the "highest degree of safety in motor carrier transportation." Plaintiffs also allege that defendants Insurance Corporation of Hannover and/or Insurance Company of Hanover breached their duty to act in good faith and without negligence in defending and settling a claim against their insured. The matter is before the court on defendant Insurance Corporation of Hannover's (ICH) motion to dismiss count III of plaintiffs' complaint (Doc. 10). Specifically, defendant ICH argues that count III of plaintiffs' complaint, the count alleging a breach of duty to act in good faith in defending and settling a claim, should be dismissed because it is not ripe for consideration and because plaintiffs do not have standing to bring the claim. The court grants defendant's Rule 12(b)(1) motion to dismiss because the court agrees that plaintiffs do not have standing to bring the claim.[1]

## I. Uncontroverted Facts

On November 19, 1999, a collision occurred between plaintiffs and defendant Ramsey. Defendant Ramsey was cited for following too closely in violation of K.S.A. § 8–1523 and pled guilty to the charge. Following the collision, plaintiffs' counsel had a number of telephone conversations with adjusters representing defendants. By letter dated May 23, 2000, plaintiffs'

counsel advised one of the adjusters, Ms. Marti Lemieux, of the nature of some of the potential claims and provided medical bills and records. On January 21, 2001, plaintiffs' counsel furnished Ms. Lemieux with additional medical records.

On October 31, 2001, on the brink of the statute of limitations deadline for plaintiffs' claims, plaintiffs submitted a 19–page demand letter extensively detailing the liability issues, medical evidence and lost income. The letter also provided a damage calculation and made a demand on defendants. The demand letter was accompanied by a settlement brochure containing documentation including a copy of the police report, the citation issued to Mr. Ramsey, a photograph of the damaged vehicle, medical bills, medical records, documentation supporting claims of lost income and the report of plaintiffs' vocational expert. The next day, Ms. Lemieux responded by faxing plaintiffs' counsel a letter stating that the case could not be settled before the running of the statute of limitations and requesting plaintiffs' previous employment records, medical records and income tax returns. On November 8, 2001, plaintiffs' counsel sent Ms. Lemieux a letter setting forth a list of plaintiff James Stewart's previous employers and health care providers, amending plaintiffs' demand to be within defendant's policy limits and stating that plaintiffs were in the process of filing a complaint unless they heard from defendant ICH. According to plaintiffs' counsel, to date he has never heard from defendant ICH regarding his settlement offer. Plaintiffs filed suit against defendants on November 16, 2001.

1. We do not address defendant's argument that plaintiffs' claim is not ripe for review. *Loving v. United States,* 1997 WL 572147, at *1, 125 F.3d 862 (10th Cir.1997) (resolving standing issue and declining to address ripeness where both ripeness and standing were challenged). Although *Loving* is an unpub-

lished Tenth Circuit decision, Rule 36.3 permits citations to unpublished decisions when they have "persuasive value with respect to a material issue that has not been addressed in a published opinion" and "would assist the court in its disposition." 10th Cir. R. 36.3(B)(1) and (2).

## II. Motion to Dismiss Standard

The Tenth Circuit has explained that a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either be a facial or factual challenge. *United States v. Rodriguez–Aguirre,* 264 F.3d 1195, 1203–04 (10th Cir.2001) (citing *Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir.1995)). A party making a facial challenge attacks the plaintiff's allegations regarding subject matter jurisdiction in the complaint. *Id.* In addressing a facial challenge, the court must treat the allegations in the complaint as true. *Id.* A party making a factual challenge goes "beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction depends." *Id.* (quoting *Holt,* 46 F.3d at 1002). In addressing a factual challenge, "the court does not 'presume the truthfulness of the complaint's factual allegations,' but 'has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Id.* (quoting *Holt,* 46 F.3d at 1002). Because the court construes defendant's motion to dismiss for lack of standing to be a facial challenge on the complaint, as opposed to a factual one, we accept plaintiff's allegations of material fact as true and construe the complaint in favor of plaintiff. *Id.* (citing *Riggs v. City of Albuquerque,* 916 F.2d 582, 584 (10th Cir.1990)).

## III. Analysis

Defendant Insurance Company of Hanover (ICH) argues that the court should dismiss count III of plaintiffs' complaint because plaintiffs lack standing to bring the claim. Specifically, defendant ICH argues that there is no privity of contract between plaintiffs and defendant ICH and, consequently, plaintiffs are not entitled to bring a claim against defendant ICH for breach of contract. Plaintiffs argue that they have standing because they are third party beneficiaries of the insurance policy.

 A party attempting to invoke the jurisdiction of the federal courts is required to set forth a case or controversy as imposed by Article III of the Constitution. "The case or controversy requirement of Article III admonishes federal courts to avoid 'premature adjudication' and to abstain from 'entangling themselves in abstract disagreements.'" *Keyes v. School District No.1, Denver, Colorado,* 119 F.3d 1437, 1443 (10th Cir.1997) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). In order to establish Article III standing, a plaintiff must meet three requirements. *Vermont Agency of Natural Resources v. United States ex. rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). First, a plaintiff "must demonstrate 'injury in fact'-a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). Second, a plaintiff "must establish causation—a 'fairly ... trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Finally, a plaintiff "must demonstrate redressability—a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Id.* (quoting *Simon,* 426 U.S. at 45, 96 S.Ct.

1917). The United States Supreme Court has stated that "[t]hese requirements together constitute the 'irreducible constitutional minimum' of standing." *Id.* (quoting *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130).

In addition to constitutional requirements, a plaintiff must also satisfy the following prudential principles: "(1) the plaintiff generally must assert his or her own legal rights; (2) the court must refrain from adjudicating 'generalized grievances' most appropriately addressed by one of the other branches of government; and (3) the plaintiff's complaint must fall within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question." *United States v. Rodriguez–Aguirre,* 264 F.3d 1195, 1204 (10th Cir.2001) (quoting *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1450–51 (10th Cir.1994)).

Finally, the Tenth Circuit has noted that "at the preliminary juncture in a case at which standing is typically assessed, 'the claimant need not prove the full merits of her underlying claim.'" *Id.* (quoting *United States v. Emerson Street,* 942 F.2d 74, 78 (1st Cir.1991)). "All that needs to be shown is a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court." *Id.* (quoting *Emerson Street,* 942 F.2d at 78). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (citing *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130).

Count III of plaintiffs' complaint charges defendant ICH with breaching its duty to act in good faith and without negligence in defending and settling a claim against its insured. Under Kansas law[2], such a claim is a contract action. *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79, 88 (1990). As the Kansas Supreme Court has explained: *"[i]mplicit* in the *usual* liability insurance policy is a covenant on the part of the insurer that, in defending or settling a claim against its insured, it will act in good faith and with reasonable care for his interests." *Id.* (emphasis in original) (quoting *Gilley v. Farmer,* 207 Kan. 536, 485 P.2d 1284 (1971)). Typically, in order to maintain a breach of contract claim, there must be privity of contract between the plaintiff and defendant on the matter sued on. *See, e.g., Professional Lens Plan, Inc. v. Polaris Leasing Corp.,* 234 Kan. 742, 675 P.2d 887, 891 (1984). In the instant action, plaintiffs concede that they were not parties to the insurance contract between defendant ICH and defendant Mitchell Transport. Nonetheless, plaintiffs contend that they have standing to sue because they are third party beneficiaries of the insurance contract.

Under Kansas law, a third party beneficiary may, in his or her own name and right, enforce a contract when made for his or her benefit even though he or she was a stranger to both the contract and the consideration, was not identified in the contract when it was made and had no knowledge that the contract existed. *Wunschel v. Transcontinental Ins. Co.,* 17 Kan.App.2d 457, 839 P.2d 64, 69 (1992) (quoting *Cornwell v. Jespersen,* 238 Kan. 110, 708 P.2d 515, 520 (1985); *French v. French,* 161 Kan. 327, 167 P.2d 305 (1946)). In other words, "[p]rivity in the sense it was used prior to recognition of the present third party beneficiary doctrine is *no longer necessary in order for the benefi-*

---

2. The court will apply Kansas law to this diversity claim because the parties applied it in their papers and the court finds no reason not to follow suit.

*ciary to maintain an action or recover on a contract intended for his benefit." Id.* (emphasis in original) (citations omitted).

 In order to determine what the intention of the contracting parties was with respect to whether a third party is an intended beneficiary, the court must apply the standard rules for construction of contracts. *Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir.1997) (citing *Fasse v. Lower Heating & Air Conditioning*, 241 Kan. 387, 736 P.2d 930, 933 (1987); *Cornwell*, 708 P.2d at 521). The meaning of the contract and the intention of the parties are to be determined from the contract itself where the terms are plain and unambiguous. *Id.* (citing *Fasse*, 736 P.2d at 933; *Martin v. Edwards*, 219 Kan. 466, 548 P.2d 779, 785–86 (1976)). If the contract is ambiguous on its face, however, the court will consider evidence of the circumstances and facts surrounding its execution. *Id.* (citing *Martin*, 548 P.2d at 786). "A contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense the contract may be understood to reach two or more possible meanings." *Id.* (quoting *Fasse*, 736 P.2d at 933).

 Plaintiffs argue that they are third party beneficiaries under the insurance contract between defendant Mitchell Transport and defendant ICH because the specific purpose of mandatory automobile insurance is to protect third parties who may be innocent victims of a driver's negligence. In fact, plaintiffs point out that under Kansas law, an insurance carrier providing liability insurance to a motor carrier can be joined with the motor carrier as a defendant and held liable directly to the injured party. *White v. Goodville Mut. Cas. Co.*, 226 Kan. 191, 596 P.2d 1229, 1232 (1979); *Sterling v. Hartenstein*, 185 Kan. 50, 341 P.2d 90 (1959). Therefore, according to plaintiffs, the only privity that

needs to be shown is that the insured committed a negligent act that injured the plaintiff because the injured party is an intended beneficiary of an insurance policy. The court is not persuaded by plaintiffs' argument and concludes that plaintiffs are not third party beneficiaries of the implied insurance contract provision requiring the insurer to act in good faith and without negligence in defending and settling a claim against its insured.

Although the court does not dispute that the purpose of mandatory automobile insurance is to protect third parties who may be injured by the insured's negligence, plaintiffs' claim against defendant ICH is not to enforce the insurance contract's general terms and recover money for damages arising from the automobile accident. Instead, plaintiffs are attempting to sue defendant ICH directly for breaching the duty to act in good faith and without negligence in defending and settling a claim against its insured. The court cannot agree that this duty, which is implicit in the usual liability or automobile insurance policy, was created to benefit the injured party.

The purpose of the implied duty that exists in every liability or automobile insurance contract is to protect the insured's interest when the insurer has assumed control of the handling of the case and settling of claims. *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502, 508 (1969); *Smith v. Blackwell*, 14 Kan.App.2d 158, 791 P.2d 1343, 1346 (1989). As the Kansas Supreme Court explained in the landmark *Bollinger* case, "public policy dictates that the insured's interests be adequately [protected], and we believe this may be best accomplished by holding that both due care and good faith are required of the insurer in reaching the decision not to settle." 449 P.2d at 508. In short, plaintiffs fail to explain how the insurer's im-

plied duty to act in good faith and without negligence in defending and settling a claim against its insured was intended to benefit them and the court does not believe that it was intended for their benefit.

Consistent with the court's conclusion, one commentator has noted:

> As a third-party claimant, an automobile accident victim lacks standing to sue the other driver's insurance company directly for the insurer's allegedly unfair settlement practices. The claimant may not sue the insurer directly by asserting that he is a third-party beneficiary of the contract between the insurer and the tortfeasor insured. Only when the claimant becomes a judgment creditor may he/she attain the status of a third-party beneficiary.... No direct action can be brought by a claimant against the tortfeasor's insurer until that third-party claimant prevails in his or her suit against the insured and obtains the status of a judgment creditor. A third-party claimant may file a direct action against the insured after the claimant has recovered a judgment against the insured tortfeasor.

Eric Mills Holmes, 15 HOLMES' APPLEMAN ON INSURANCE 2D, Law of Liability Insurance §§ 111.1, at 44–45 (2000).

In other words, if plaintiffs obtain a judgment against the insured party, defendant Mitchell Transport, and become judgment creditors, then they may attempt to collect in a garnishment proceeding against the insurer, see, e.g., Bollinger, 449 P.2d at 504; Smith, 791 P.2d at 1347, but such a proceeding is not equivalent to permitting plaintiffs to proceed directly against the insurer at this point in the litigation. As the court explained in Smith, in a garnishment proceeding the injured party steps into the shoes of the insured party and the claim is analyzed as if the insured party was bringing the claim. 791 P.2d at 1347 ("Garnishee pro-

ceedings mean this: the creditor takes the place of the debtor, [o]nly this and nothing more. The former takes only that which the latter could enforce." (internal quotations and citations omitted)).

Because the court has held that plaintiffs are not third party beneficiaries of the implied contract provision requiring good faith on the part of the insurer in handling and settling claims against its insured, plaintiffs have failed to show that they have suffered an injury in fact even if defendant ICH has breached its duty to act in good faith. The court was unable to locate a liability insurance case where the court held that an insurer owes the injured party an independent duty to settle in good faith and without negligence and it appears that absent a statutory duty, none exists. In all of the cases the court reviewed, the insurer owed no independent duty to the injured party. See, e.g., 14 Couch on Insurance 3d, § 204:31 (1999) ("Under this view, prior to establishment of legal liability, the tort claimant has no legal right to require the tortfeasor to negotiate or settle, and such claimant likewise lacks a right to require such action by the insurance company. Further, the insurers do not owe a duty to third-party claimants not to engage in unfair settlement practices, nor do they owe third-party claimants a duty to investigate a claim and offer policy limits once all the facts are disclosed.").

In sum, the court concludes that plaintiffs have not shown that they have suffered an injury in fact. Consequently, at this point in the litigation, plaintiffs have no standing to enforce the implied contract provision against defendant ICH and the court must dismiss count III of plaintiff's complaint for lack of standing under Rule 12(b)(1).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion

to dismiss count III of plaintiff's complaint (Doc. 10) is granted.