**Brenda C. ROBERTS, Plaintiff–Judgment Creditor,**

v.

**Patrick A. PRINTUP, Jr. Defendant–Judgment Debtor**

**and**

**Shelter Mutual Insurance Co., Garnishee.**

**No.  CIV.A. 02–2333CM.**

United States District Court, D. Kansas.

April 14, 2004.

David A. Hoffman, Donald W. Vasos, Law Offices of Donald W. Vasos, Shawnee Mission, KS, for Plaintiff.

Craig C. Blumreich, Gehrt & Roberts, Chartered, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

The instant action arises out of a one-vehicle automobile accident on April 21, 2000. Plaintiff was a passenger in a vehicle operated by her son, defendant Patrick Printup. Plaintiff sustained bodily injuries and damages arising from the accident. Shortly before the accident, plaintiff insured the vehicle with garnishee Shelter Mutual Insurance Company (Shelter). Plaintiff has obtained judgment against defendant pursuant to a settlement agreement, a covenant not to execute on the personal assets of defendant, and an assignment to plaintiff of defendant's contract rights against Shelter. Plaintiff claims that Shelter breached its contract by acting negligently or in bad faith in its

handling of plaintiff's claim for damages. This matter is before the court on Shelter's Motion for Summary Judgment (Doc. 76), plaintiff's Motion to Exclude J. Eugene Balloun as Gamishee's Expert Witness (Doc. 78), and plaintiff's Motion to Exclude James E. O'Malley as Garnishee's Expert Witness (Doc. 80).

## I. Facts [1]

On April 18, 2000, plaintiff applied to Shelter for insurance coverage for her sixteen-year old son's newly acquired vehicle.[2] On April 21, 2000, plaintiff's son, Patrick Printup, was driving the vehicle and plaintiff was a passenger when the two were involved in a single-car accident due to an apparent brake failure. As a result, plaintiff sustained an open compound fracture of her right tibia and fibula. The fracture resulted in a non-union, requiring surgical fusion.

Shelter was placed on notice of the motor vehicle loss, but the identity of the reporter is apparently not known.[3] Shelter assigned the claim to Lezlie Siebolt for handling. Siebolt began working on the claim on April 26, 2000, which included attempts to contact plaintiff via telephone and letter and requesting a copy of the accident report. On May 4, 2000, Siebolt's supervisor, Gary Dauer, reviewed the file, noting that "may have BI," personal injury protection (PIP) benefits will apply, and medical information should be collected. Dauer later testified that, when he wrote the note in the Supervisor Claim Log, he was alerting Siebolt to the fact that she needed to consider a potential claim by plaintiff against Printup, the driver of the car.[4]

On May 10, 2000, Siebolt took a recorded statement of plaintiff. The recorded statement confirms that on Friday, April 21, 2000, plaintiff was a passenger in the insured vehicle operated by Printup in Atchison, Kansas. Printup was headed north on 5th Street when the brakes failed. Shelter claims that the recorded statement reveals that Printup was not at fault for the accident. Plaintiff disputes this contention.

On May 11, 2000, Shelter notified its PIP unit at the home office in Columbia, Missouri, of the incident so that the PIP could be paid. In addition, Shelter paid the City of Atchison $250 for its property damage claim resulting from the accident. On May 31, 2000, Siebolt prepared the file for closure.

On June 23, 2000, plaintiff signed a PIP application and, on August 21, 2000, plaintiff executed medical authorizations related to her PIP claim. Shelter subsequently payed plaintiff's first medical bills submitted, which immediately exhausted the PIP medical limits. On September 15, 2000, Shelter closed plaintiff's PIP claim after payment of limits.

There is a factual dispute as to whether plaintiff contacted Shelter prior to April 11, 2002, inquiring as to whether she had a right to assert a claim under the liability portion of the insurance policy. Plaintiff claims that, about a year after the accident, she called a Shelter sales agent, Karla Hackerott, who erroneously told her that she had no right to make such a claim. There is nothing documenting this alleged phone call, and Hackerott denied under oath that such a conversation occurred.

---

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

2. The vehicle was titled and registered to both plaintiff and Printup.

3. The binder loss notice states that it was reported by "insured." Insured is not identified as to whether it was Patrick Printup, plaintiff, or someone on their behalf.

4. In this particular case, Printup was Shelter's insured and plaintiff was the claimant.

Sometime around April 11, 2002, plaintiff consulted with her attorney for a review of her medical treatment regarding her ankle injury. On April 11, 2002, plaintiff mailed a handwritten letter to Shelter's Topeka Claims Office offering to settle all claims for the $25,000 policy limits. It is unclear whether plaintiff saw her attorney before or after she mailed the letter or whether she consulted with her attorney with regard to drafting the letter, as plaintiff's own deposition testimony is self contradicting. In any event, the statute of limitations was running, as evidenced in plaintiff's letter: "I am running out of time and need your answer within ten days."

On April 16, 2002, plaintiff filed a Petition in the District Court of Atchison County, Kansas. Plaintiff also filed a Praecipe directing the clerk to withhold issuance and service of a summons on Printup. After the time for accepting the offer expired, plaintiff filed a Praecipe directing the clerk to issue summons for service on Printup. After Printup was served, Shelter hired the Payne & Jones Law Firm to defend him. Printup removed the action to this court.

In the meantime, with respect to plaintiff's demand letter, plaintiff had mailed her letter to the Topeka Claims Office, where it was file-stamped "received" April 15. Apparently, the Topeka mail handler erroneously determined the letter related to a PIP claim, which were handled by Shelter's PIP Department in Columbia, Missouri. On April 21, 2002, Topeka claims placed the letter in a daily mail packet for Columbia and sent it by regular mail. On May 2, 2002, the Columbia PIP Department mailed plaintiff's letter to Brian Stegman in the Kansas City Claims Department. Kansas City Claims received the letter on May 6, 2002.

On May 7, 2002, Shelter supervisor Chris Wilhite contacted Shelter litigation attorney Carter Ross in Columbia, Missouri, to discuss plaintiff's demand. Both concluded that, upon confirmation of the medical bills, Shelter would pay its limits. That same day, Siebolt contacted plaintiff to advise plaintiff of Shelter's position and to request copies of plaintiff's medical bills. Thereafter, Siebolt offered $25,000 liability limits to plaintiff, although the timing of this offer is in dispute. Shelter claims that the offer occurred sometime on May 7 or 8, while plaintiff contends the offer was made on May 10.

In any event, on January 29, 2003, the court approved settlement of the case, and entered judgment in favor of plaintiff and against Printup in the sum of $1,033,891.60. Printup assigned his breach of contract action to plaintiff and received a covenant not to execute on his personal assets. Plaintiff then filed the present garnishment proceeding against Shelter to collect the judgment.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve

the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

Plaintiff contends in this lawsuit that Shelter acted negligently or in bad faith when it failed to initiate settlement negotiations with plaintiff after becoming aware of a potential bodily injury claim and when it failed to timely accept plaintiff's April 11, 2002 policy limits demand.

■ Under Kansas law, a liability insurer may become liable in excess of policy limits if it fails to exercise good faith in considering offers to compromise the claim for an amount within the policy limits. *Bollinger v. Nuss*, 202 Kan. 326, 333, 449 P.2d 502 (1969). Accordingly, the fiduciary relationship of the insurer and the insured imposes a duty upon the insurer to make reasonable efforts to negotiate a settlement of a claim against the insured. *Smith v. Blackwell*, 14 Kan.App.2d 158, 163, 791 P.2d 1343 (1989). The insurer is obligated to initiate settlement negotiations regardless of the actions of the injured party. *Id.* (citing *Rector v. Husted*, 214 Kan. 230, 519 P.2d 634 (1974)).

### A. Pre–April 11, 2002 Demand

■ Shelter contends that it owed no duty to initiate settlement negotiations prior to April 11, 2002, because, it claims, plaintiff had not yet asserted a claim under the liability portion of the insurance policy. Plaintiff, on the other hand, asserts that Shelter's duty to negotiate was triggered when the covered loss was initially reported.

■ There is nothing in the record evidencing that plaintiff made a bodily injury claim under the liability portion of the insurance policy prior to April 11, 2002. There is a factual dispute as to whether plaintiff contacted Shelter agent Hackerott to inquire whether she may have a claim. Plaintiff claims that the agent told her she had no claim, while Hackerott expressly denies such a conversation occurred. In any event, the court considers this factual dispute immaterial, because plaintiff testified that she did not rely on Hackerott's information:

Q: So would it be fair to state then that despite what Carla had told you, you were still aware that you had a possible claim against Patrick Printup and/or Shelter despite what Carla had told you. Is that fair to say?

A: Yes.

(Plaintiff's Deposition, at pg. 39). Indeed, plaintiff testified that the only reason she did not make a claim against her son sooner was because she was still receiving treatment for her ankle, which ended in early February 2002.

Plaintiff did submit a claim for PIP benefits, which was duly paid. However, the court does not believe that plaintiff's filing for PIP benefits automatically triggers a duty on the part of Shelter to initiate settlement negotiations under the liability portion of her son's policy.

The Kansas Automobile Injury Reparations Act, Kan. Stat. Ann. § 40–3101 *et seq.*, is designed to make personal injury protection insurance mandatory by requiring every owner of a motor vehicle to obtain first-party PIP coverage payable by her own insurance company regardless of fault. *Richards v. Etzen,* 231 Kan. 704, 706–07, 647 P.2d 1331 (1982). Thus, Shelter's PIP benefit payment to plaintiff required Shelter to make no determination of fault. Moreover, absent some sort of claim made by plaintiff, Shelter would not reasonably have known to what extent, if any, plaintiff's medical bills exceeded the PIP limits. As set forth by the Kansas Supreme Court:

> If ... plaintiff means to suggest that any time an insurance agent acquires knowledge of some injury to a policyholder it becomes the company's duty to initiate an investigation and offer a settlement-without any claim being made-we reject the suggestion. We believe the insured has some duty to give notice to his company of his loss, and of the fact that he is making a claim under his

policy, before the company is obligated to move.

*Sloan v. Employers Cas. Ins. Co.,* 214 Kan. 443, 445, 521 P.2d 249 (1974).

"[T]he duty to settle arises if the carrier would initiate settlement negotiations on its own behalf were its potential liability equal to that of its insured." *Coleman v. Holecek,* 542 F.2d 532 (10th Cir.1976). The court believes that a carrier is under no duty to initiate settlement negotiations prior to a claim being presented. The court therefore determines that Shelter is entitled to summary judgment on plaintiff's bad faith claim as it relates to any settlement negotiations, or lack thereof, prior to plaintiff's April 11, 2002 demand.

## A. Post–April 11, 2002 Demand

■ Plaintiff claims that Shelter acted negligently or in bad faith by failing to accept her time-sensitive offer to settle within policy limits. As previously set forth, a liability insurer may be liable in excess of policy limits if it acts negligently or in bad faith in failing to accept a compromise offer within policy limits. *Bollinger v. Nuss,* 202 Kan. at 333, 449 P.2d 502, 508; *Rector v. Husted,* 214 Kan. 230, 239, 519 P.2d 634, 641 (1974). When determining the question of an insurer's liability for an excess judgment, the conduct of an insurer must not be viewed through hindsight. *Glenn v. Fleming,* 247 Kan. 296, 305, 799 P.2d 79, 85 (1990). "Instead, the offer and the strength of the plaintiff's case must be viewed as they fairly appeared to the insurer and its agents and attorneys *at the time the offer was refused." Id.* (emphasis added). In other words, an insurance company acting honestly and in good faith upon adequate information "should not be held liable because it failed to prophesy the result." *Id.* Bad faith requires a finding of something more than mere error of judgment.

In this case, there was no settlement offer until five days before plaintiff commenced suit and ten days before the statute of limitations was to run. Most notably, upon receipt of plaintiff's offer, Shelter did not refuse plaintiff's April 11, 2002 demand. Rather, sometime between May 7 and May 10, 2002, Shelter agreed to pay plaintiff the policy limits.[5] However, at that point, the statute of limitations had run, and plaintiff already had filed suit.

Plaintiff points to *Smith v. Blackwell,* wherein the Kansas Court of Appeals found bad faith where the insurer initially rejected the plaintiff's offer to settle within policy limits, but later made a policy limits offer after the plaintiff filed suit. The court stated: " '[A]ll the good faith and settlement offers in the world after suit is filed will not immunize a company from the consequences of an *unjustified refusal to pay* which made the suit necessary.' " 14 Kan.App.2d at 163, 791 P.2d 1343 (citing *Sloan,* 214 Kan. 443 at 444, 521 P.2d 249) (emphasis added). Plaintiff's reliance on *Smith* is, however, misplaced, since there was no prior refusal to pay on the part of Shelter. Moreover, in *Smith,* "[t]here was ample time given for a full and complete investigation by the insurer *after* the [plaintiff's] offer to settle for the policy limits was made." *Id.* (emphasis added). In the case at hand, the time between plaintiff's demand and the time plaintiff filed suit was a matter of days.

Plaintiff emphasizes the fact that she sent her demand letter on April 11, 2002, referencing in the letter that the offer was time-sensitive, but that Shelter erroneously routed the letter to the wrong department, thereby delaying a response until after she had filed suit and after the statute of limitations had run. The court determines that this clerical error does not constitute bad faith. In other words, the court does not believe that an insurer is liable for a bad faith claim where, because of a clerical oversight, the insurer does not respond within ten days (the time between the April 11, 2002 offer and the running of the statute of limitations) to an initial demand of $25,000. In fact, when the April 11, 2002 demand letter was routed to the proper Shelter supervisor, an acceptance of the demand to settle was made within a couple of days. At most, the time between the April 11, 2002 demand and Shelter's acceptance of the offer was less than 30 days. The court concludes as a matter of law that Shelter did not act in bad faith and, accordingly, is not liable to plaintiff for any excess judgment over the policy limits. Shelter is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Shelter's Motion for Summary Judgment (Doc. 76) is granted. Plaintiff's Motion to Exclude J. Eugene Balloun as Garnishee's Expert Witness(Doc. 78), and plaintiff's Motion to Exclude James E. O'Malley as Garnishee's Expert Witness (Doc. 80) are denied a moot. This case is hereby dismissed.

---

**5.** Both parties cite to the eight factors set forth in *Bollinger v. Nuss,* 202 Kan. 326, 338, 449 P.2d 502, 511 (1969), each arguing that those factors weigh in their respective favors. However, the factors set forth in *Bollinger* are not applicable in these circumstances, since those factors are considered when "deciding whether the insurer's refusal to settle constituted a breach of its duty to exercise good faith." *Bollinger v. Nuss,* 202 Kan. 326, 338, 449 P.2d 502, 511 (1969). Here, there was no refusal to settle.